Logan James LEMMONS, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–00–00557–CR.

Court of Appeals of Texas,
San Antonio.

Feb. 13, 2002.

Rehearing Overruled March 21, 2002.

M. Patrick Maguire, Kerrville, for Appellant.

E. Bruce Curry, District Attorney, Kerrville, for Appellee.

Sitting: SARAH B. DUNCAN, KAREN ANGELINI and SANDEE BRYAN MARION, Justices.

KAREN ANGELINI, Justice.

Logan James Lemmons was convicted of capital murder and sentenced to life imprisonment. On appeal, Lemmons argues that the trial court erred by denying his motion to suppress, by refusing to give a limiting instruction to the jury, by permitting the State to introduce an extraneous offense, by denying his motion for continuance, and by overruling his objections to the State's closing argument. Additionally, Lemmons maintains that he was denied effective assistance of counsel. We affirm the judgment of the trial court.

### BACKGROUND

On the night of January 1, 1999, Lemmons was staying with his friend and co-worker Johnny Sizemore. Lemmons borrowed a pair of Sizemore's blue jeans and went to the Star Gate Game Room with Sizemore, Sizemore's brother Alfred, and Sam Pozzi. After spending an hour at the game room, they fished for a couple of hours at a nearby lake. Lemmons, Sizemore, and Pozzi then went back to the Sizemore residence. Sometime between 2:00 a.m. and 3:00 a.m. on January 2, 1999, Lemmons announced that he was going to go have sexual relations and started walking down the road in the direction of a mobile home, occupied by Tracy Baker and Michael Bussey, which is located about a half mile from the Sizemore residence. Lemmons and Sizemore left for work together the next morning. While at work, Sizemore noticed that Lemmons was having a difficult time performing his job and appeared to be in pain. Lemmons showed Sizemore a small puncture wound in his upper right chest, explaining that a piece of glass or a stick had punctured him. Lemmons said that he had been engaging in sexual relations with a girl named Katie when her mom and dad had come home. He claimed that he had jumped out the window and thought he must have fallen on something.

That same morning, Baker and Bussey were found in their mobile home stabbed to death. Investigating the murder scene, Chief Deputy Matthew L. King observed a jacket on the front porch of the mobile home. Clifton Sales, Lemmons's brother, identified the jacket as the one that Lemmons had been wearing on the evening of the murders. Inside the mobile home, King discovered a shirt and an undershirt, which appeared to have blood on them. There was a hole in each shirt, indicating that the person who had been wearing the shirts might be suffering from a stab wound to the upper right chest area. Moreover, a car was missing from the Baker residence and appeared to have been stolen by the killer. The car was found partially concealed among some cedar trees less than 500 feet from the Sizemore residence.

The next day, January 3, 1999, Joyce Sizemore found a pair of blue jeans on her driveway, which she recognized as belonging to her son, Johnny Sizemore. Joyce noticed a grease-like substance on the

jeans and threw them into the washing machine with her other laundry. Tests later indicated that the stain on the jeans was blood consistent with Baker's.

Lemmons was arrested on the night of January 3, 1999 and was interrogated into the early morning hours of January 4, 1999 by Texas Rangers Martin and Leal. Ranger Martin warned Lemmons of his rights pursuant to article 38.22 of the Code of Criminal Procedure.[2] At the end of this interrogation, Lemmons stated,

> Lemmons: I'm done for the evening sir, please. I'm ... for the evening at least. If you all would like to talk tomorrow or something, I would be more than willing to talk. But for the evening *or until I can get a lawyer* ...
> Martin: OK.
> Lemmons: Please. Because I did not kill them people like that and I got stabbed before I ever stabbed anyone. And I only stabbed one person there. And that's the truth.
> Martin: That will conclude the interview with Logan Lemmons.

(emphasis added). Lemmons was then taken before a magistrate and warned again pursuant to article 15.17 of the Code of Criminal Procedure.

On January 11, 1999, Lemmons was again interrogated, this time by Ranger Martin and Chief Deputy King. The police had obtained two pieces of luggage that Lemmons had left at his place of work. Lemmons consented to the search of the luggage, signing a written consent form. The officers then began their interrogation. They pulled some blue jeans from the luggage and asked Lemmons if these were the blue jeans he was wearing

on the night of the murders. Lemmons replied that no, those jeans were most likely still at the Sizemore residence. Lemmons repeatedly stated that he did not want to talk to them until he talked to "someone." After about twenty minutes, Lemmons finally unequivocally stated that he wanted an attorney. At no time during this interrogation did the officers read Lemmons his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

On January 14, 1999, King again summoned Lemmons, asking him to consent to a blood sample. Lemmons agreed and signed a consent form.

On January 15, 1999, two officers went to the Sizemore residence to photograph shoes and footprints. While at the residence, they asked Joyce Sizemore if she knew of anything else that might be related to the investigation. Joyce Sizemore gave them the blue jeans she had found in her driveway.[3]

On April 25, 2000, the State obtained a search warrant to extract a blood sample from Lemmons.

## MOTION TO SUPPRESS BLOODSTAINED BLUE JEANS

■ In his first issue, Lemmons argues that the trial court erred by failing to suppress the blue jeans discovered as a result of the January 11, 1999 interrogation. Lemmons contends that he invoked his right to counsel at the end of the interrogation on January 4, 1999 and that when the officers interrogated him on January 11th, his Fifth, Sixth, and Fourteenth Amendment rights, as well as his rights under article I, section 10 of the Texas

---

**2.** These warnings are a codification of *Miranda.*

**3.** The trial court made a finding that the State discovered the blue jeans as a result of the January 11, 1999 interrogation, not as a result of this incident.

Constitution, were violated.[4] As such, Lemmons maintains that the blue jeans should have been suppressed, because the State learned the location of the blue jeans through an illegal interrogation. The trial court suppressed Lemmons's statements, because it found that the officers had not complied with article 38.22 of the Code of Criminal Procedure, Texas's codification of the *Miranda* warnings.[5] However, the trial court did not suppress the blue jeans, because it found that Lemmons had not been coerced during his January 11th interrogation.[6] *See Baker v. State,* 956 S.W.2d 19, 24 (Tex.Crim.App.1997) ("[M]ere violations of the *Miranda* rule are not covered by the state exclusionary rule contained in Article 38.23.").

We review a trial court's ruling on a motion to suppress for abuse of discretion. *State v. Mata,* 30 S.W.3d 486, 488 (Tex. App.-San Antonio 2000, no pet.). Under this standard, we view "the evidence in the light most favorable to the trial court's ruling," affording almost total deference to findings of historical fact supported by the record. *Id.* However, when the resolution of factual issues does not turn upon credibility or demeanor, we review the trial court's application of law de novo. *Id.*

## A. Fifth Amendment Right to Counsel

 In *Davis v. United States,* 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), the Supreme Court held that a request for counsel must be "unambiguous," meaning that the suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Merely mentioning the word "lawyer" is not an explicit invocation of the right to counsel. *Russell v. State,* 727 S.W.2d 573, 575–76 (Tex.Crim.App.1987). Courts have found that suspects did not unequivocally invoke their right to counsel where (1) the suspect asked the officers whether they thought the presence of an attorney was necessary, *Id.* at 576, (2) the suspect stated, "Maybe I should talk to someone," *Dinkins v. State,* 894 S.W.2d 330, 350–52 (Tex.Crim.App.1995), and (3) the suspect asked the detective what he thought a lawyer would tell the suspect to do, *Id.* at 352. *Davis* itself held that the suspect's comment, "Maybe I should talk to a lawyer," was not an unambiguous articulation of a desire for counsel. *Davis,* 512 U.S. at 462, 114 S.Ct. 2350. On the other hand, no magic words are necessary

---

4. Lemmons does not explain how his rights under article I, section 10 of the Texas Constitution are more expansive than those under the Fifth and Sixth Amendments. Therefore, we decline to reach the merits of this issue because of Lemmons's inadequate briefing. Tex.R.App. P. 38.1.

5. Section 3 of article 38.22 states that no oral statement of an accused shall be admissible unless (1) an electronic recording is made of the statement, (2) the accused was read the warnings under section 2 and knowingly, intelligently, and voluntarily waived those rights set out in the warning, (3) the recording is accurate and has not been altered, (4) all voices on the recording are identified, and (5) the accused's attorney is provided with a true, complete, and accurate copy of all recordings.

6. While this finding is relevant to whether Lemmons's Fifth Amendment rights were violated, it is irrelevant to Sixth Amendment analysis. *See U.S. v. Shaw,* 701 F.2d 367, 380 (5th Cir.1983).

> Because a Sixth Amendment violation is not dependent upon coercion, the protection of the Sixth Amendment is not waived by conduct showing that the defendant's statements were not coerced. The government must prove that the defendant knowingly and intelligently relinquished his right not to be questioned in the absence of counsel "after adversary proceedings had commenced."

*Id.* (citations omitted).

to invoke the right to counsel. *Dinkins,* 894 S.W.2d at 352; *Russell,* 727 S.W.2d at 576; *see Jamail v. State,* 787 S.W.2d 372, 375 (Tex.Crim.App.1990) (noting that defendant's statement, "Now it's time for me to call my lawyer," was clear and unequivocal request for counsel).

■ Lemmons's statement that he would be more than willing to talk to the officers tomorrow *"or* until I can get a lawyer" is not an unambiguous invocation of his right to counsel. "Or" makes Lemmons's request conditional and thus, equivocal. As Lemmons had not invoked his Fifth Amendment right to counsel at the time the officers questioned him about the blue jeans on January 11th,[7] his Fifth Amendment rights were not violated.

**B. Sixth Amendment Right to Counsel**

■ The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. This right to counsel was made applicable to state felony prosecutions by the Due Process Clause of the Fourteenth Amendment. *Wesbrook v. State,* 29 S.W.3d 103, 117 (Tex.Crim.App. 2000), *cert. denied,* 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001). Attachment of this right occurs at all critical stages of prosecution. *Id.* (citing *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986)). The Sixth Amendment right to counsel is triggered by the initiation of "adversary judicial proceedings" against a suspect, "whether by way

of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Whether adversary judicial proceedings had commenced in this case is not an issue, as the State conceded during oral argument that adversary proceedings had, in fact, begun at the time Lemmons was questioned about the blue jeans.[8]

■ Once the Sixth Amendment attaches, "government efforts to elicit information from the accused, including interrogation, represent 'critical stages' at which the Sixth Amendment applies." *Jackson,* 475 U.S. at 630, 106 S.Ct. 1404. The burden is on the State to prove that Lemmons waived his Sixth Amendment right to counsel voluntarily, knowingly, and intelligently. *Robinson v. State,* 851 S.W.2d 216, 224 (Tex.Crim.App.1991); *Terrell v. State,* 891 S.W.2d 307, 312 (Tex.App.-El Paso 1994, pet. ref'd); *see Jackson,* 475 U.S. at 633, 106 S.Ct. 1404. Waiver is shown as a matter of law with regard to pretrial questioning if an accused (1) who has not yet retained or been appointed counsel (2) decides voluntarily not to rely on his right to counsel and (3) that decision is made with the understanding that he could remain silent and request a lawyer and that the State could use any statement he gave against him. *Robinson,* 851 S.W.2d at 224 (citing *Patterson v. Illinois,* 487 U.S. 285, 297, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988)); *Terrell,* 891 S.W.2d at 312. *Miranda* waivers may be sufficient to show the voluntary relinquishment required for waiver of the Sixth Amend-

---

7. Lemmons told the officers where the blue jeans were located *before* he unequivocally invoked his right to counsel on January 11, 1999.

8. In *Nehman v. State,* 721 S.W.2d 319, 321–22 (Tex.Crim.App.1986), the court of criminal appeals noted that there was no question in

that case that adversarial proceedings had been initiated at the time of the article 15.17 "warning hearing." Lemmons appeared before a magistrate pursuant to article 15.17 on January 4, 1999, seven days before the interrogation in question.

ment right to counsel. *Patterson,* 487 U.S. at 292–93, 108 S.Ct. 2389; *Terrell,* 891 S.W.2d at 312. The State did not present any evidence of waiver during the hearing on the motion to suppress and therefore, wholly failed to meet its burden. Thus, the trial court should have suppressed the blue jeans as fruit of the poisonous tree.[9] *See Wong Sun v. U.S.,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon Supp.2002).

 The trial court's error, however, was harmless. Texas Rule of Appellate Procedure 44.2(a) provides that "[i]f the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error was not harmless beyond a reasonable doubt. *Wesbrook,* 29 S.W.3d at 119. We should calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence. *Id.* "While the most significant concern must be the error and its effects, the *presence of overwhelming evidence* supporting the finding in question can be a factor in the evaluation of harmless error." *Id.* (emphasis added). Thus, we must determine whether there was a reasonable possibility that the error, either alone or in context, moved the jury from a state of nonpersuasion to one of persuasion as to the issue in question. *Id.*

In addition to the blue jeans, Sizemore testified that Lemmons "used some vulgar language to say he was going to go have

sex" and walked in the direction of the Baker residence. Tanya M. Lynn, a friend of Baker, testified that Baker and Lemmons knew each other and had dated once. Moreover, Lemmons's brother, Clifton Sells, identified the jacket found on the porch of Baker's mobile home as the one worn by Lemmons on the night of the murders. A shirt found at the crime scene was "consistent with a mixture of DNA having come from more than two people and consistent with being from Lemmons, Baker, and Bussey." Lemmons could not be excluded from having contributed to the mixture and "the probability of selecting an unrelated person at random who could have been a contributor to this stain [was] approximately 1 in 714,000 for Caucasians, 1 in 1,560,000 for Blacks, and 1 in 1,660,000 for Hispanics." The shirt, along with an undershirt, had a hole, which when worn, would be located in the upper right chest area. Significantly, Lemmons's stab wound was in his upper right chest area. Further, blood consistent with Lemmons's blood was found on the following items at the crime scene: a wallet, three dollar bills, and the pants worn by Bussey. Finally, a car registered to Baker's mother, was taken from the scene of the crime and discovered close to the Sizemore residence, the home where Lemmons had been staying. Because of the overwhelming evidence of Lemmons's guilt, we conclude that the trial court's error did not contribute to Lemmons's conviction beyond a reasonable doubt and overrule his first issue.

### MOTION TO SUPPRESS BLOOD SAMPLE

 In his second issue, Lemmons argues that the trial court erred in denying his motion to suppress the blood sample obtained on January 14, 1999, because

---

9. Although the State argued at the suppression hearing that the blue jeans are admissible under the inevitable discovery doctrine, it does not further this argument on appeal.

the sample was obtained in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and article I, section 10 of the Texas Constitution.[10] Although Lemmons had clearly invoked his right to counsel under the Fifth Amendment before the request for the blood sample, his Fifth Amendment rights were not violated. A request for consent of a blood sample does not constitute interrogation under the Fifth Amendment. *See Jones v. State,* 7 S.W.3d 172, 175 (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd). Likewise, although Lemmons's Sixth Amendment right to counsel had attached, a request for consent of a blood sample is not a critical stage of the judicial proceedings under the Sixth Amendment. *See State v. Mata,* 30 S.W.3d 486, 488 (Tex. App.-San Antonio 2000, no pet.). We hold, therefore, that the trial court did not err in denying Lemmons's motion to suppress the blood sample and overrule his second issue.

## EXTRANEOUS OFFENSE

In his third, fourth, and fifth issues, Lemmons argues that the extraneous robbery offense was inadmissible under Texas Rules of Evidence 401 and 403 and that the trial court should have given a limiting instruction to the jury at the time the offense was admitted. During his case-in-chief, Lemmons called Texas Ranger Leal as an adversarial witness. Leal was one of the Rangers who interrogated Lemmons on January 4, 1999. The following exchange occurred between Lemmons's attorney and Leal at trial.

Q: Mr. Leal, my question to you was did you ever tell Logan Lemmons that you didn't doubt that Michael stabbed Tracy and you said that you did tell him that?

A: Yes.

Q: In fact, you told him that on more than one occasion, didn't you?

A: Yes, sir.

Q: Several times [you] told him that you didn't doubt that Michael had, in fact, stabbed Tracy?

A: Yes.

Q: You also told Logan that you didn't doubt that Tracy and Michael had started fighting after Michael had seen Tracy and Logan talking on the porch of the trailer?

A: Yes, sir.

Q: And you told him that several times?

A: Yes, sir.

On rebuttal, the prosecutor asked Leal if he had believed those statements at the time he made them. Leal responded that he had not. On cross-examination, Lemmons's attorney asked Leal why he would lie. Leal responded that it was an investigative technique. Based on Leal's testimony, the State argued that Lemmons opened the door regarding the issue of self-defense and as such, the extraneous robbery conviction was admissible. The trial court agreed and permitted the State to call three witnesses whom Lemmons was convicted of robbing at gunpoint.

## A. Texas Rules of Evidence 401 and 403

Lemmons's attorney objected under Texas Rules of Evidence 401 and 403. Lemmons argues on appeal that the trial court erred in overruling his objections. We review the trial court's decision to admit extraneous offense evidence for abuse of discretion. *Mitchell v. State,* 931 S.W.2d 950, 953 (Tex.Crim.App.1996); *Welch v. State,* 993 S.W.2d 690, 697 (Tex.

---

**10.** As noted previously, Lemmons has not adequately briefed this issue with regard to any rights under the Texas Constitution. *See* Tex. R.App. P. 38.1.

App.-San Antonio 1999, no pet.). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991). Generally, a defendant's prior crimes or bad acts are inadmissible to prove he has a bad character or a propensity to commit the offense charged. *Montgomery*, 810 S.W.2d at 386; TEX.R. EVID. 404(a)-(b), 405(a). Such evidence, however, may be admissible for other purposes, such as proof of motive, intent, plan, knowledge, or lack of mistake or accident. *Montgomery*, 810 S.W.2d at 387; TEX.R. EVID. 404(b).

 When the accused claims self-defense or accident, the State, in order to show the accused's intent, may show other violent acts where the defendant was an aggressor. *Halliburton v. State*, 528 S.W.2d 216, 217–18 (Tex.Crim.App.1975); *Johnson v. State*, 963 S.W.2d 140, 144 (Tex.App.-Texarkana 1998, pet. ref'd); *Robinson v. State*, 844 S.W.2d 925, 929 (Tex.App.-Houston [1st Dist.] 1992, no pet.); *Bradley v. State*, 960 S.W.2d 791, 803 (Tex.App.-El Paso 1997, pet. ref'd). This is the converse of the rule that allows a defendant to show extraneous acts of violence by the deceased in a murder case when the defendant claims self-defense and that the deceased was the first aggressor. *Robinson*, 844 S.W.2d at 929.

 In the instant case, Lemmons chose not to take the stand and decided instead to call Ranger Leal. Through Ranger Leal's testimony, Lemmons was able to introduce certain statements he made to Ranger Leal during the January 4, 1999 interrogation regarding self-defense. Lemmons then called Tanya Lynn to introduce evidence of Baker and Bussey arguing and of Bussey's act of hitting a wall in anger. Through these witnesses, Lemmons introduced evidence of self-defense. Moreover, Lemmons asked for and received an instruction on self-defense in the charge. Thus, the extraneous robbery offense was relevant under rule 401 to rebut Lemmons's self-defense theory.

 Lemmons also contends that the trial court should not have admitted the evidence under rule 403. A Rule 403 balancing test includes the following factors:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

(2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way;"

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; [and]

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim.App.2000). We will reverse only upon a clear abuse of discretion. *Id.* The extraneous robbery offense showed that Lemmons had acted as a first aggressor in the past. The witnesses testified that Lemmons entered the home, pointed a gun at them, tied them up, and stole some money and a car. Given Lemmons's introduction of self-defense as an issue, the State needed to rebut Lemmons's claim that he was not the first aggressor. The

State was able to elicit the testimony quickly and efficiently. As such, we cannot hold that the trial court abused its discretion in finding that the probative value of the extraneous offense was not substantially outweighed by the danger of unfair prejudice.

## B. Limiting Instruction

Lemmons's attorney requested that the trial court give a limiting instruction to the jury at the time the extraneous offense was admitted. The trial court denied the request.[11] Texas Rule of Evidence 105(a) provides,

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.

TEX.R. EVID. 105(a).

In *Rankin v. State*, 974 S.W.2d 707, 713 (Tex.Crim.App.1996), the defendant requested a limiting instruction at the time the trial court admitted the extraneous offense testimony into evidence. The trial court denied the request, deferring the limiting instruction until the jury charge. *Id.* Although noting that rule 105 does not address the "temporal aspect of when limiting instructions should be given," the court of criminal appeals assumed that

> the spirit of the rule and the contemplation of the rule-makers includes two separate notions: First, that limiting instructions actually curb the improper use of evidence and, second, that the

rule should act in a way that not only "restrict[s] the evidence to its proper scope," but does so as effectively as possible. TEX.R.CRIM. EVID. 105(a). Working under these notions, logic demands that the instruction be given at the first opportunity. If limiting instructions impede the improper use of evidence, then an instruction given when the evidence is admitted limits that evidence to its proper scope immediately. An instruction given for the first time during the jury charge necessarily leaves a window of time in which the jury can contemplate the evidence in an inappropriate manner ... Because we have determined that TEX.R.CRIM. EVID. 105 requires a limiting instruction, upon proper request, when evidence is admitted and because we see no reason not to adopt the "better" and most effective application of Rule 105(a), we hold that the court of appeals erred in affirming the trial court's decision to defer the limiting instruction until the jury charge. Having held the court of appeals in error, we remand the case to them so that they may determine whether such error is subject to a harmless error analysis under TEX.R.APP. P. 81(b)(2), and, if so, whether the error is harmless in fact.

*Id.* at 712–13; *see also Hammock v. State*, 46 S.W.3d 889, 894 (Tex.Crim.App.2001).

On remand, the court of appeals held that the trial court's error was harmless. *Rankin v. State*, 995 S.W.2d 210, 215 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd). Finding that the error was non-constitutional, it conducted a harmless-error analysis pursuant to Texas Rule of Appellate Procedure 44.2(b). Rule

---

**11.** The trial court stated, "I think those instructions are appropriate at the time that I give the jury their instructions when they go back to deliberate, but I think it is a comment if I make—if I say that ahead of time. The jury charge did contain such a limiting instruction."

44.2(b) requires an appellant to show that a substantial right was affected. TEX. R.APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Rankin*, 995 S.W.2d at 215 (citing *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997)). A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has a fair assurance that the error did not influence the jury, or had but a slight effect. *Id.* (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998)). The court noted that the trial court submitted a proper limiting instruction in the jury charge, that the jury had been instructed not to consider the evidence for purposes of character conformity, and that there was no evidence to show the jury formed an opinion prior to the time it began its deliberation. *Id.* Thus, the court of appeals concluded that the error was harmless.

 Relying on *Rankin*, we hold that the trial court erred by denying Lemmons's request for a contemporaneous limiting instruction. That error, however was harmless. The extraneous-offense evidence, consisting of the testimony of three witnesses, was introduced on the morning of the last day of trial. Three or four hours passed from the last witness to the reading of the jury charge. The jury charge contained the following instruction:

> You are further instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose, unless you find and believe beyond a reasonable doubt that the defendant committed such other

offense, if any, and even then you may only consider the same in determining whether the defendant acted in self-defense or in defense of a third person regarding the charges set out in the indictment in this cause.

Given the short amount of time that passed from the introduction of the extraneous-offense evidence to the trial court's reading of the instruction to the jury, the trial court's error did not affect a substantial right.

We overrule Lemmons's third, fourth, and fifth issues.

## MOTION FOR CONTINUANCE

 In his sixth issue, Lemmons contends that the trial court should have granted his motion for continuance. A trial court's decision to refuse a continuance is reversible only for an abuse of discretion. *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex.Crim.App.1995). On May 12, 2000, ten days before trial, Lemmons filed his first motion for continuance, arguing that the State had just "announced that it was seeking an evidentiary search warrant for the apparent purposes of conducting new DNA testing on the Defendant." The warrant had issued on April 25, 2000 and authorized another blood sample from Lemmons, along with saliva and hair samples.[12] Lemmons argued in his written motion for continuance that the "Defendant simply has not had time to adequately prepare for trial, especially in light of the new testing sought by the State and further in light of the fact that the State is now testing new materials not heretofore tested by the State." During the hearing on the motion, defense counsel argued that because of the new testing, he had put his DNA expert "on hold." Thus, his DNA expert was not ready to testify. The pros-

---

**12.** Lemmons had consented to a prior blood sample on January 14, 1999.

ecutor responded that she sought the search warrant, not because she was going to retest DNA samples, but because she was afraid Lemmons's consent to the blood sample might be suppressed. She stated that the State was not retesting any samples, it was only testing blood splatters on the shower curtain for the first time. The prosecutor informed the trial court that Lemmons's DNA expert had already had an opportunity to view this shower curtain. She represented that she had explained to defense counsel that the State was not retesting samples, only testing the shower curtain for the first time. Further, she emphasized that Lemmons's written motion did not mention that his DNA expert was unavailable. Lastly, she argued that "there's basically four families involved here that have extended families who have cancelled vacations, taken time off work, bought plane tickets and made arrangements to be here for the trial on the 22nd and then have also planned vacations after the trial and they're just ready to put this behind them." The trial court denied Lemmons's motion for continuance.

■ Lemmons has failed to preserve this issue for appeal. The proper method for preserving error in the denial of a motion for continuance based on the absence of a material witness is to make "some showing under oath to substantiate the allegations as to the expected testimony." *Taylor v. State*, 612 S.W.2d 566, 569 (Tex.Crim.App. [Panel Op.] 1981); *see Hartson v. State*, 59 S.W.3d 780, 784 (Tex. App.-Texarkana 2001, no pet.); *Latham v. State*, 20 S.W.3d 63, 65 (Tex.App.-Texarkana 2000, pet. ref'd); *Hackleman v. State*, 919 S.W.2d 440, 452 (Tex.App.-Austin 1996, pet. ref'd, untimely filed); *Burns v. State*, 923 S.W.2d 233, 237 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd); *Outland v. State*, 810 S.W.2d 474, 475 (Tex.App.-Fort Worth 1991, pet. ref'd); *Martinez v. State*,

802 S.W.2d 334, 337 (Tex.App.-Houston [1st Dist.] 1990, pet. ref'd). Lemmons filed a motion for new trial, but did not raise this issue, nor did he attach an affidavit proffering the DNA expert's testimony. *See Taylor*, 612 S.W.2d at 570. Thus, Lemmons's sixth issue is overruled.

### INEFFECTIVE ASSISTANCE OF COUNSEL

■ Lemmons maintains that he was denied effective assistance of counsel. Because the test for ineffective assistance of counsel is the same under the state and federal constitutions, both inquiries are subsumed into one. *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex.Crim.App.1986). We measure a claim of ineffective assistance of counsel against the two-prong test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hernandez*, 726 S.W.2d at 55-57. The appellant must first show that his attorney's performance was deficient, i.e., that his assistance fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999). Second, assuming the appellant has demonstrated deficient assistance, it is necessary to affirmatively prove prejudice. *Id.*

■ The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each case. *Id.* at 813. Any allegation of ineffectiveness must be *firmly founded in the record*, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id.* Absent both showings an appellate court cannot conclude that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* Appel-

lant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Id.*

Lemmons claims that his attorney should have made a bill of exception with regard to his January 4, 1999 statement and should have been able to convince the trial court to admit this statement into evidence if his attorney had properly argued the "state of mind" exception to the hearsay rule. Lemmons filed a motion for new trial and attached an affidavit of his trial counsel, Norman T. Whitlow. Whitlow's affidavit states,

> At the time of trial and in arguing against the State's Motion in Limine in the above entitled and numbered cause I did not offer or tender a Bill of Exceptions to the Court on the issue of admissibility of the statement. I have read the foregoing Motion for New Trial and swear that all of the allegations of fact contained therein are true and correct.

Whitlow's affidavit does not sufficiently reflect his reasons for failing to do the things of which Lemmons complains. All the affidavit states is that he did not do those actions. Thus, Lemmons's allegations of ineffectiveness are not firmly founded in the record. In such situations, the issues are better presented within the framework of a post-conviction writ of habeas corpus under article 11.07 of the code of criminal procedure. TEX.CODE CRIM. PROC. ANN. art. 11.07 (Vernon Supp.2001); *Ex parte Torres*, 943 S.W.2d 469, 475–76 (Tex.Crim.App.1997); *see also Thompson*, 9 S.W.3d at 813 ("A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal. Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim . . ."). We overrule Lemmons's seventh issue.

## CLOSING ARGUMENT

In his final issue, Lemmons argues that the prosecutor made inappropriate comments during closing argument. The approved general areas of argument are: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement. *Wesbrook*, 29 S.W.3d at 115. "Even when an argument exceeds the permissible bounds of these approved areas, such will not constitute reversible error unless, in the light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Id.* The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial. *Id.* In most circumstances, an instruction to disregard the remarks will cure the error. *Id.*

We note some overzealous comments made by the prosecutor regarding Lemmons's extraneous offense, including "we have the Defendant, terrorizing little old ladies walking with canes, tying them up, holding guns to their backs, stealing their money, just like he did in this case, and stealing their car, just like he did in this case." However, upon objection by defense counsel, the trial court sustained the objection and instructed the jury the following:

> The extraneous offense can only be used in determining whether or not there was a self-defense involved by any act by the Defendant. I'll sustain the objection. You can only have an extraneous offense for self-defense purpose[s].

Given the trial court's immediate limiting instruction, we hold that the prosecutor's

comments about the extraneous offense were cured.[13]

Lemmons also complains on appeal about the prosecutor's statements regarding a conversation which she theorized took place between Baker and Lemmons were inappropriate. The trial court overruled Lemmons's objection but instructed the jury that the attorneys' statements are just arguments and are not evidence. The trial court instructed, "You will recall what the evidence presented and you will base your verdict on the evidence." Given the trial court's instructions, we hold that any inappropriate remarks made by the prosecutor were cured. We overrule Lemmons's eighth issue.

## CONCLUSION

Having overruled all issues, we affirm the judgment of the trial court.

---

**13.** After the limiting instruction, the prosecutor stated, "As I said, that is to show you that the Defendant is the aggressive one. Who do you think is aggressive? Someone who robs little old ladies or someone who gets into an argument with his girlfriend and says, 'Do you want me to leave?'" Lemmons's attorney did not object to this statement and thus, waived any error. TEX.R.APP. P. 33.1.