In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-132 CR


____________________



LEROY ERNEST GREGORY, JR., Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 9th District Court


Montgomery County, Texas


Trial Cause No. 03-09-06614-CR






MEMORANDUM OPINION


 A jury convicted Leroy Ernest Gregory, Jr. of possession of a controlled substance,
methamphetamine, and possession of an immediate precursor, pseudoephedrine, with intent
to unlawfully manufacture methamphetamine. Gregory pleaded true to two enhancement
paragraphs. The trial court found both enhancement paragraphs true and on each count
sentenced Gregory to imprisonment for life in the Texas Department of Criminal Justice,
Institutional Division, the sentences to be served concurrently. 

 Gregory appeals raising three points of error. In his first two points, Gregory claims
the evidence is legally and factually insufficient to support his conviction on both counts of
possession. We first note that Gregory was charged in a single indictment along with Clyde
Dorsey, Jr., Robby Dale Hon, and Cody Hamilton. Gregory was tried separately and a
parties charge was given to the jury. The thrust of Gregory's argument is that the State failed
to meet its burden to establish he, as opposed to his co-defendants, was in possession of
either methamphetamine or pseudoephedrine.

 Possession is defined as "actual care, custody, control or management." Tex. Pen.
Code Ann. § 1.07(a)(39) (Vernon Supp. 2005). To meet its burden, the State must establish
Gregory exercised actual care, control and management over the contraband and had
knowledge the substance in his possession was contraband. See King v. State, 895 S.W.2d
701, 703 (Tex. Crim. App. 1995)(citing Martin v. State, 753 S.W.2d 384, 387 (Tex. Crim.
App. 1988)). 

 Sergeant Larry Bonds testified that he, along with Deputy Mike White, Deputy Ray
Zavadil and Deputy Chilcutt, proceeded to a residence to serve a felony warrant on Hamilton. 
Present at the residence were Gregory, Dorsey, Hon, and Hamilton. Dorsey, the property
owner, gave Bonds permission to enter. Upon entering the residence, Bonds noticed there
was "no lighting in the house at all" and smelled an unfamiliar odor. He further observed
Gregory laying on the couch to the left of the front door. Hamilton was found in a corner in
the right-hand back room. After finding Hamilton, the officers brought everyone outside. 

 Upon Dorsey's request, Deputy Zavadil escorted him inside the residence to the right-hand back room to retrieve his glasses. In plain view, Deputy Zavadil found what appeared
to be a marijuana cigarette, a mirror with a white powdery substance and a razor blade laying
on it, pipes, such as are used to smoke marijuana, and hypodermic syringes. Zavadil also
found what he recognized as marijuana and a device used to roll cigarettes in a can at the
edge of the bed. While searching for other occupants in the remaining rooms, Zavadil found
more syringes laying around and a planter with a fluorescent light on it and marijuana plants
growing in it. Zavadil also saw a clear bottle sitting on the floor. It had a separated liquid
in it which Zavadil recognized as a possible by-product of a methamphetamine lab. Zavadil
further noted a chemical smell in the house. The Special Investigative Unit (SIU) for the
Drug Task Force was called to process the scene. Bonds testified the reason for calling SIU
was the odor that was later clarified as methamphetamine. 

 In the immediate area outside the residence was a burn pile that had several empty
blister packs of cold medication in various stages of incineration. Officers also found a well-traveled path to a small pup tent. Zavadil noted a chemical smell in the tent and a five-gallon
bucket with two-liter plastic bottles containing a clear liquid. 

 Philip Cash, a detective with the Montgomery County Sheriff's Department, SIU,
testified there was a clandestine methamphetamine laboratory at the residence. He described
it as a red phosphorous, iodine, pseudoephedrine reduction laboratory. Cash testified
everything needed to manufacture methamphetamine was present. The laboratory appeared
to have been functioning and some of the components had been boxed, indicating an
operation had occurred there. Cash found Ziploc bags containing a powdery substance. He
testified the bags are used in the trafficking end; the drugs are pre-weighed and put in Ziploc
bags for sale and distribution. A plastic-like tote box containing hose, gallon-size solvent
cans, sports bottles that had substances in them, and plastic hose stained from use, was found
in the living room, where Gregory was found. The kitchen area opened up into the living
room. In the kitchen, Red Devil lye and sodium hydroxide were sitting on the stove, along
with a sports bottle containing a blue-colored liquid (a solvent of some type). Cash testified
it was unusual to see a solvent in such a location because it is very flammable. There was
also small Pyrex glassware, which is preferred because it holds heat in the microwave. Cash
testified, 

 The cooking process was not going on at the time like when they boil it in the
flask, but the plastic bottles had solvents in them, and the liquids had
separation. We also had plastic bottles that had the pseudoephedrine, and
when they took the separation of the pseudo from the pills, the binder was still
in the bottles. They had the seal taped on there where they poured the solvent
out and left the binder in the bottle which was an indication that it had
occurred. But the actual steps they were in, I couldn't tell you what process
other than I know the actual cooking process had been done. 


Cash could not say when the cooking process took place. Cash testified there were items
containing pseudoephedrine recovered at the scene. 

 A latent print was obtained from a quart-sized Coca-Cola bottle found on the floor of
the back bedroom on the left side of the house. That print was matched to the ring finger on
Gregory's right hand and the substance in the bottle tested positive for ephedrine. 

 Cash testified he was given drivers' licenses when he arrived at the scene. Gregory's
license was admitted into evidence as State's Exhibit 19. The address on Gregory's license
is directly across the street from Dorsey's residence. Cash testified it was common for
people involved in this activity to have or use different identifications. State's Exhibit 30
was then admitted into evidence over Gregory's objection. It is a Texas Driver's license with
the name of Manuel A. Rodriquez and a Houston address. Both State's Exhibit 19 and 30
have Gregory's photograph. 

 Detective Robert Clark was called to the residence to investigate a possible
clandestine methamphetamine lab. Clark videotaped the location. Clark found a burn pile
and testified they typically encounter clandestine methamphetamine labs where they attempt
to destroy evidence by burning it. Usually, they find pseudoephedrine packages, blister
packages, empty fuel cans, and things of that nature. The camp site was found by following
the path to the woods behind the residence. There was a two-liter soda bottle with some type
of solvent in it, possibly containing methamphetamine or another step in the cooking process. 
Clark testified it was common for soda bottles to be used in manufacturing
methamphetamine. According to Clark, items removed from the camp site, such as coffee
filters, solvents, and red phosphorous, are commonly used in manufacturing
methamphetamine. Clark identified a crystal white powder as either processed
pseudoephedrine or ephedrine, or finished methamphetamine. Inside the residence, Clark
found Red Devil lye, a drain cleaner used to balance the pH when manufacturing
methamphetamine. A "box lab," a common way to transport a lab, was found on the floor.
Empty pseudoephedrine boxes and blister packs, which Clark identified as the precursor for
manufacturing methamphetamine, were found in greater quantity than would be consistent
with personal consumption. Sergeant David Holden testified crushed pseudoephedrine
tablets were found at the scene. Clark found a soda bottle, commonly used as a reaction
vessel to separate solutions. He also testified pseudoephedrine is processed to separate the
ephedrine. A triple-beam scale was found. There were cases of matches, commonly found
in methamphetamine labs utilizing red phosphorous to manufacture methamphetamine. 
Clark testified a large quantity of matches are required to obtain the necessary amount of red
phosphorous. 

 Minh Nguyen, a chemist for the Department of Public Safety Crime Lab in Houston,
Texas, performed an analysis of 95 percent of the exhibits submitted to him, the remaining
samples only had a trace amount. The samples were positive for methamphetamine (959.07
grams), iodine (19.19 grams), and ephedrine (905.09 grams). Nguyen testified that while
pseudoephedrine was found in some of the methamphetamine samples, all of the exhibits
contained either pseudoephedrine or methamphetamine. 

 Because Gregory was not in exclusive possession of the place where the contraband
was found, it cannot be concluded he had knowledge or control over the contraband unless
there are additional independent facts and circumstances affirmatively linking him to the
contraband. See Brown v. State, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995). Evidence
affirmatively linking the accused to the contraband will suffice for proof that he possessed
it knowingly. See Wootton v. State, 132 S.W.3d 80, 86-87 (Tex. App.--Houston [14th Dist.]
2004, pet. ref'd).

 This Court has recognized the following as factors tending to establish
affirmative links: 

 (1) the contraband was in plain view;

 (2) the accused was the owner of the premises in which the contraband was
found;

 (3) the contraband was conveniently accessible to the accused;

 (4) the contraband was found in close proximity to the accused;

 (5) a strong residual odor of the contraband was present;

 (6) paraphernalia to use the contraband was in view or found near the accused;

 (7) the physical condition of the accused indicated recent consumption of the
contraband in question;

 (8) conduct by the accused indicated a consciousness of guilt;

 (9) the accused had a special connection to the contraband;

 (10) the place where the contraband was found was enclosed;

 (11) the occupants of the premises gave conflicting statements about relevant
matters; and

 (12) affirmative statements connect the accused to the contraband.

Nixon v. State, 928 S.W.2d 212, 215 (Tex. App.--Beaumont 1996, no pet.). See also Watson
v. State, 861 S.W.2d 410, 414-15 (Tex. App.--Beaumont 1993, pet. ref'd)). Another factor
is the amount of drugs found. See Porter v. State, 873 S.W.2d 729, 733 (Tex. App.--Dallas
1994, pet. ref'd). "The number of factors present is not as important as the logical force the
factors have in establishing the elements of the offense." Gilbert v. State, 874 S.W.2d 290,
298 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd). Although the evidence used to satisfy
these elements may be direct or circumstantial, the State must establish the accused's
connection with the controlled substance and/or contraband was more than just fortuitous. 
See Wootton, 132 S.W.3d at 86-87 (citing Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim.
App. 1995)). "Mere presence at a place where contraband is being used or possessed does
not justify a finding of joint possession. Nunn v. State, 640 S.W.2d 304, 305 (Tex. Crim.
App. 1982)." Wootton, 132 S.W.3d at 87. The State's evidence must show facts and
circumstances that, viewed in the totality of the circumstances, indicate the defendant's
knowledge and control over the drugs, but the evidence need not be so strong that it excludes
every other outstanding reasonable hypothesis except the defendant's guilt. See Brown, 911
S.W.2d at 748; Hyett v. State, 58 S.W.3d 826, 830 (Tex. App.--Houston [14th Dist.] 2001,
pet. ref'd).

 The evidence affirmatively linking Gregory to the contraband showed the contraband
was in plain view, conveniently accessible to and in close proximity to the accused, an odor
of contraband and paraphernalia to use the contraband were present, the place where the
contraband was found was enclosed, and the amount of contraband was large. The bottle
with Gregory's fingerprint was located inside the residence, an area not generally accessible
to the public, and contained a precursor. After reviewing all of the evidence in the light most
favorable to the verdict, we conclude a rational trier of fact could have found the essential
elements of the offenses beyond a reasonable doubt. See Swearingen v. State, 101 S.W.3d
89, 95 (Tex. Crim. App. 2003). Point of error two is overruled.

 In evaluating Gregory's factual-sufficiency challenge, we discuss the evidence he
claims is most important in allegedly undermining the jury's verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). Gregory points to the fact the soda bottle with his
fingerprint on it was found in another room and there was no evidence as to when the print
was left on the bottle. While it is certainly possible Gregory possessed the bottle before it
contained ephedrine, it was within the province of the jury to resolve such theories. 
Additionally, Gregory notes that Ngyuen testified the soda bottle with his fingerprint on it
contained ephedrine, rather than pseudoephedrine. Gregory complains there was no evidence
presented as to where the packages of pseudoephedrine and the crushed pseudoephedrine
were recovered and no attempt was made to link them to him. The bottle with Gregory's
print on it contained the precursor ephedrine. In addition to that present at the scene, all the
evidence suggests the ephedrine came from a substantial quantity of pseudoephedrine that
had already been processed. Gregory also points out that three deputies entered the room he
was in and made no discovery of drugs, drug paraphernalia, or the lab box. The record
reflects both Bonds and Zavadil testified as to how dark it was inside the residence. Zavadil
testified the back room was lit from sunlight, otherwise it was "very dark." Further, Bonds
testified he did not search the house but instead, called the Special Investigation Unit and
simply awaited their arrival to process the scene. Upon considering all the evidence in a
neutral light, we find the evidence supporting the verdict is not too weak to support the jury's
finding of guilty beyond a reasonable doubt. See Zuniga v. State, 144 S.W.3d 477, 484-85
(Tex. Crim. App. 2004). Further, the evidence contrary to the verdict is not so strong that
the beyond-a-reasonable-doubt standard could not have been met. Accordingly, the jury was
rationally justified in finding guilt beyond a reasonable doubt. Id. at 485. Point of error one
is overruled.

 Point of error three argues the trial court erred in admitting the altered driver's license
into evidence. The decision to admit or exclude evidence is a matter within the discretion
of the trial court. See Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex.
1998). The trial court is given wide latitude to admit or exclude evidence of extraneous
misconduct. See Montgomery v. State, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990). So
long as the trial court operates within the boundaries of its discretion, an appellate court
should not disturb its ruling, whatever it may be. Id. The trial court abuses its discretion
when it acts in an unreasonable or arbitrary manner or acts without reference to any guiding
principles. See Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991).

 Defense counsel objected to the evidence on the grounds of relevance and that it was
more prejudicial than probative. See Tex. R. Evid. 402, 403. Counsel also noted that
possession of a forged government document is an extraneous offense. See Tex. R. Evid.
404(b).

 According to Cash, it is common for people involved in manufacturing
methamphetamine to use false identification, for renting hotel rooms or buying certain
chemicals. In his brief, Gregory argues there was no evidence he had used it for that
purpose. We agree, but that is not the issue. There was evidence Gregory possessed an
altered license, and that evidence was admissible to demonstrate Gregory's involvement in
the clandestine laboratory, viz intent, preparation, plan, and knowledge, as well as absence
of mistake or accident. See Tex. R. Evid. 404(b). Therefore it was relevant. See Tex. R.
Evid. 401, 402. In light of the offense charged and the evidence adduced at trial, we cannot
say the evidence Gregory possessed a bogus license unfairly prejudiced the jury or confused
the issues. Accordingly, we find the trial court did not abuse its discretion in admitting the
evidence. See Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).

 Gregory further asserts the trial court erred in overruling counsel's request for a
limiting instruction at the time the evidence was admitted. In accordance with Jones v. State,
944 S.W.2d 642, 653-54 (Tex. Crim. App. 1996), we conclude the trial court erred in failing
to grant counsel's request for a limiting instruction at the time the evidence was introduced. 
The error, however, is non-constitutional. See Jones v. State, 119 S.W.3d 412, 423-24 (Tex.
App.--Fort Worth 2003, no pet.); Lemmons v. State, 75 S.W.3d 513, 524-25 (Tex. App.--San
Antonio 2002, pet. ref'd). A non-constitutional error is harmless unless a substantial right
is affected. See Lemmons, 75 S.W.3d at 524-25; Tex. R. App. P. 44.2(b). A substantial right
is affected when the error had a substantial and injurious effect or influence on the jury's
verdict. See Rankin v. State, 995 S.W.2d 210, 215 (Tex. App.--Houston [14th Dist] 1999,
pet. ref'd). "A criminal conviction should not be overturned for non-constitutional error if
the appellate court, after examining the record as a whole, has a fair assurance that the error
did not influence the jury, or had but a slight effect." Lemmons, 75 S.W.3d at 524-25.

 Gregory alleges on appeal this error harmed him because the jury probably considered
it evidence that he had altered the license for the purpose of possessing and manufacturing
drugs. Gregory received a limiting instruction in the charge, reducing the risk the jury might
misuse the evidence during deliberations. Jones, 944 S.W.2d at 654. There was a relatively
short interval between admission of the evidence and the trial court's reading of limiting
instructions in the court's charge. See Lemmons, 75 S.W.3d at 525. Furthermore, as noted
above, the extent of other evidence introduced outweighed any possible prejudicial effect. 
The extraneous offense was not more heinous or inflammatory than the charged offense,
minimizing its prejudicial effect even in the absence of a contemporaneous limiting
instruction. See Jones, 944 S.W.2d at 654. For these reasons, we conclude the trial court's
error in overruling counsel's request for a contemporaneous limiting instruction did not affect
a substantial right and therefore must be disregarded. See TEX. R. APP. P. 44.2(b). Point
of error three is overruled.

 The judgment of the trial court is AFFIRMED.


 ________________________________

 CHARLES KREGER

 Justice


Submitted on January 26, 2005 

Opinion Delivered March 2, 2005

Publish


Before Gaultney, Kreger, and Horton, JJ.