COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-529-CR
 
DAVID LEON JONES                                                                        
APPELLANT
V.
THE STATE OF TEXAS                                                                        
STATE
------------
FROM THE 16TH DISTRICT COURT OF DENTON COUNTY
------------
OPINION
------------
I. Introduction
A jury convicted Appellant David Leon Jones ("Jones") of indecency
with a child and assessed his punishment at forty years' confinement after he
pleaded "true" to an enhancement paragraph in the indictment. In five
issues on appeal, Jones contends that the trial court: (1) abused its discretion
by admitting extraneous offense/bad acts evidence over objection, (2) erred by
refusing to give the jury a limiting instruction each time extraneous
offense/bad acts evidence was presented to the jury, (3) erred by giving
improper limiting instructions on the use of extraneous offense/bad acts
evidence, (4) erred by overruling his objection to the State's closing argument,
and (5) erred by instructing the jury on the definition of "reasonable
doubt" at the guilt-innocence phase of trial. We will affirm.
II. Factual Background
When G.V. was in the seventh grade, she was introduced to Jones through her
friend, K.W., who dated Jones's son. Jones brought G.V., K.W., and their friends
lunch at school once or twice a week and took them to his son's baseball games,
to the movies, and horseback riding. During the summer, Jones took G.V. and her
friends to the lake and to swim at Clearwater Pool, and he continued to take
them to see movies almost every weekend. Jones asked G.V. to call him by his
first name because he said that being called "Mr. Jones" made him feel
old.
Eventually, Jones made sexual comments to G.V. He told her that she looked
good in a swimsuit, that he preferred shaved girls because it was better
"when he would eat them out," and that he did not have a great
marriage or "get much sex". Jones also told G.V. and her friends that
they could ask him sexual questions and that he would explain everything to
them.
On Saturday, July 15, 2000, Jones took G.V., K.W., and M.E. to see a movie.
After the movie, Jones told the girls that an actress in the movie had a nice
body that "turned him on" and that G.V. looked like the actress. On
the way home from the movie, Jones took K.W. and M.E. "doorbell
ditching." K.W. and M.E. would ring someone's doorbell and then run. G.V.
could not participate in this activity because she had recently had stitches
removed from her leg, so she was left alone with Jones in the truck.
While Jones was alone with G.V., he asked her how far she had gotten with her
boyfriend and whether she had ever given him a blow job. G.V. answered that she
did not know how to give a blow job. Jones said that he would show her; he took
two of G.V.'s fingers, placed them in his mouth, and moved them back and forth.
Shortly after this incident, K.W. and M.E. returned from "doorbell
ditching," and Jones dropped both of them off at M.E.'s house, leaving G.V.
alone with Jones again.
Jones told G.V. that he had something to show her at his house. When they
went inside Jones's house, G.V. noticed that it was dark and asked where Jones's
wife and children were. He responded that they were in Wichita Falls. Jones then
told G.V. that he had something to show her in his daughter's room. Once in his
daughter's room, Jones sat next to G.V. on the bed and played a videotape of a
couple having sex. Jones placed his hand on G.V.'s leg and asked if the tape
"turned her on." G.V. responded, "No, not really." Jones
told G.V. that it excited him, and he got in front of G.V., straddled her, and
pushed her down on her back on the bed. Jones put his hands down G.V.'s pants,
touched her, and "spread her." G.V. started to cry, and Jones stopped.
G.V. sat up, and Jones again touched and rubbed G.V.'s private part on the
outside of her shorts while telling her that she was warm and wet. Afterwards,
Jones told G.V. that he did not mean to do it and that she should not tell
anyone or else he would not be able to take the girls places and have fun. G.V.
initially agreed not to tell anyone, but approximately three weeks later, G.V.
told K.W. and A.W. and their father. K.W. and A.W.'s father then called G.V.'s
mother.
On August 9, 2000, Jones spoke "off the record" with Corey Blount
(hereinafter "Blount"), a police officer with the Highland Village
Police Department who was also Jones's friend. Jones told Blount that he was
suspected of inappropriately touching a girl, that touching did occur, but that
it was accidental. On August 12, 2000, at a back-to-school party, Jones took G.V.
upstairs by herself and told her that what had happened was a joke. On August
16, 2000, Officers Jerry Hull and Terry Barnhart, investigators with the
Highland Village Police Department, searched Jones's house for the sexual
videotape that Jones showed G.V. However, they were unable to locate the
videotape.
III. Admissibility of Extraneous Offenses and Bad Acts
During the direct examination of G.V., the State sought to introduce
extraneous offenses/bad acts committed by Jones. The trial court held a hearing
outside the presence of the jury to determine the evidence's admissibility. The
bad acts by Jones involving G.V. included Jones paying money to G.V. and other
underage girls to remove part or all of their swimsuits, providing alcohol to
G.V. and other underage girls, offering underage girls money to run naked down
the beach, and attempting to untie the swimsuits of G.V. and her friends. Jones
asserted objections to the extraneous bad acts evidence pursuant to Rules 401,
404(b), and 403, and the court initially sustained his objections. Later,
however, the court admitted this evidence, granting Jones a running objection.
The State also offered extraneous offense/bad acts evidence on rebuttal,
following Jones's case in chief. The State called four girls as rebuttal
witnesses, and they testified to other offenses and bad acts by Jones on
occasions when G.V. was not present. Jones objected to the testimony concerning
each of the incidents, but the court admitted the testimony over his objection
for the purposes of showing motive, plan, and opportunity, and to rebut a
defensive theory. Thus, the extraneous offense/bad acts evidence admitted at the
guilt-innocence phase of trial falls into two categories: acts involving G.V.(1)
admitted during the State's case-in-chief and acts not involving G.V. admitted
during the State's rebuttal.
The extraneous offense/bad acts evidence involving G.V. included the
following conduct by Jones. G.V. testified that once when she and a number of
other girls were at Clearwater Pool with Jones, he offered them fifty dollars to
take off their swimsuits. G.V. and Jones's daughter, C.J., accepted the offer.
Jones told his daughter not to tell anyone about what happened. K.W., A.W., T.B.,
and M.E. confirmed this incident. G.V. also testified that on another occasion,
when Jones took her and other girls out on his boat, he offered K.W. two hundred
dollars to run naked on the beach, and she accepted. K.W. and M.E. also
testified about this incident. K.W. said that Jones paid her in cash. G.V.
testified that several times at the lake and twice at Clearwater Pool, Jones
gave her and the other girls wine coolers disguised in Gatorade bottles. K.W.,
M.E., and A.W. also testified that Jones gave them alcohol. G.V. said that while
the girls were with Jones at the lake, he would try to untie their swimsuits in
the water. G.V. said he sometimes tried to pull down her swimsuit bottoms. M.E.
told the jury about this same incident.
The extraneous bad acts evidence involving minor girls other than G.V.
included the following conduct by Jones. J.P. testified that Jones was
physically affectionate toward her, putting his hands around her, touching her,
and hugging her for extended periods of time. She said Jones's actions made her
feel uncomfortable. During a ski trip that her family took with Jones and his
family, Jones grabbed J.P.'s face and kissed her, which "freaked her
out." J.W. testified that she and other young girls babysat Jones's kids
and said Jones was always "touchy-feely" with them, hugging, kissing,
and tickling them frequently on their inner thighs or stomach. J.W. said once
when she was babysitting, Jones massaged her back and then started massaging her
breasts under her bra. Jones told J.W. that he was only joking around, but then
grabbed her breasts on the outside of her shirt. R.H. testified that she
sometimes babysat Jones's children and that while she was at Jones's house
babysitting, Jones had tickled her upper inner thigh near her crotch. She said
that once when she bent over to get something from the refrigerator, Jones
reached up her shorts and touched her bottom. A.S., another babysitter, said
that she and Jones's daughter were lying on a bed when Jones, wearing only a
towel wrapped around him, walked over to the bed. Jones began massaging A.S.'s
back and then massaged under A.S.'s bra and on her bottom. A.S. said she felt
very uncomfortable.
A. Standard of Review for a Determination Under Rule 404(b)
Rule 404(b) embodies the established principle that a defendant is not to be
tried for collateral crimes or for being a criminal generally. Tex. R. Evid.
404(b); Nobles v. State, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992); Booker
v. State, 103 S.W.3d 521, 530 (Tex. App.--Fort Worth 2003, pet. filed) (op.
on reh'g); Curtis v. State, 89 S.W.3d 163, 170 (Tex. App.--Fort Worth
2002, pet. ref'd). Consequently, extraneous offenses are not admissible at the
guilt-innocence phase of trial to prove that a defendant acted in conformity
with his character by committing the charged offense. Tex. R. Evid. 404(b); Booker,
103 S.W.3d at 529; Martin v. State, 42 S.W.3d 196, 201 n.2 (Tex.
App.--Fort Worth 2001, pet. ref'd). An extraneous offense, however, has
noncharacter-conformity relevance where it has any tendency to make the
existence of a fact that is of consequence to the determination of the action
more or less probable than it would be without the evidence. Tex. R. Evid. 401; Powell
v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). That is, extraneous
offense evidence that tends to make an elemental or evidentiary fact more or
less probable or tends to rebut some defensive theory is relevant beyond its
tendency to prove a person's character or that he acted in conformity therewith.
Montgomery v. State, 810 S.W.2d 372, 386-87 (Tex. Crim. App. 1991) (op.
on reh'g); Johnson v. State, 932 S.W.2d 296, 301 (Tex. App.--Austin
1996, pet. ref'd). Consequently, evidence of other crimes or extraneous
misconduct may be admissible to prove motive, opportunity, intent, preparation,
plan, knowledge, or absence of mistake or accident. Tex. R. Evid. 404(b); Booker,
103 S.W.3d at 529-30. Such evidence may also be introduced to rebut a defensive
theory. Powell, 63 S.W.3d at 439-40.
Additionally, article 38.37 of the Texas Code of Criminal Procedure expands
the admissibility of extraneous acts evidence in trials involving certain
offenses committed against a child under seventeen years of age:

         Sec. 2. Notwithstanding Rules
 404 and 405, . . . evidence of other crimes, wrongs, or acts committed by the
 defendant against the child who is the victim of the alleged offense shall be
 admitted for its bearing on relevant matters, including:
 
         (1) the state of mind of the
 defendant and the child; and
         (2) the previous and
 subsequent relationship between the defendant and the child.
 

Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (Vernon Supp. 2003); Rankin
v. State, 41 S.W.3d 335, 347 (Tex. App.--Fort Worth 2001, pet. ref'd).
The State, as the proponent of extraneous offense evidence, bears the burden
of showing admissibility. See Rankin v. State, 974 S.W.2d 707, 718
(Tex. Crim. App. 1998) (op. on reh'g). The trial court's task is to determine
whether extraneous offense evidence is relevant for a purpose other than the
propensity of the defendant to commit crimes or other bad acts. Booker,
103 S.W.3d at 530. Rulings on relevance should be left largely to the trial
court, relying on its own observations and experience, and will not be reversed
absent an abuse of discretion. Moreno v. State, 858 S.W.2d 453, 463
(Tex. Crim. App.), cert. denied, 510 U.S. 966 (1993); Corley v.
State, 987 S.W.2d 615, 618 (Tex. App.--Austin 1999, no pet.). Moreover,
appellate courts should give great discretion to the trial courts in matters of
relevancy, reversing only if the trial court acts outside "the zone of
reasonable disagreement." Montgomery, 810 S.W.2d at 391.
B. Rule 404(b) Relevance Determination
Jones contends that although some of the extraneous offenses and bad acts
were relevant, they were all more prejudicial than probative, were used to
establish that he acted in conformity with his bad character, and did not comply
with the rules of law for rebutting a defensive theory. He further argues that
their improper admission harmed him. The State asserts that the extraneous
offenses and bad acts involving G.V. were statutorily relevant pursuant to code
of criminal procedure article 38.37 and that the acts not involving G.V. were
relevant to show motive, opportunity, and plan and to rebut a defensive theory.
1. Relevance of Acts Involving G.V.
G.V., K.W., A.W., T.B., and M.E. testified concerning extraneous crimes,
wrongs, or acts by Jones against G.V., who was the victim of the charged
offense. The State contends that this evidence was admissible under article
38.37 because it had a bearing on relevant matters including Jones's and G.V.'s
states of mind and the previous relationship between them. See Tex.
Code Crim. Proc. Ann. art. 38.37, § 2; Hitt v. State, 53 S.W.3d 697,
704-05 (Tex. App.--Austin 2001, pet. ref'd) (recognizing that, in cases
involving the sexual abuse of children, article 38.37, section 2 supersedes the
application of Texas Rules of Evidence 402 and 404). Jones agrees that the
evidence showing that he tried to untie and/or take off G.V.'s swimsuit at the
lake, that he furnished alcohol to G.V., and that he offered G.V. money at
Clearwater Pool to take off her swimsuit, is relevant. Jones disputes, however,
the relevance under article 38.37 of the evidence showing that he offered to pay
underage girls other than G.V. to take off their swimsuits, that he offered
other underage girls money to run naked on the beach, that he furnished alcohol
to other underage girls, and that he tried to remove the swimsuits of underage
girls other than G.V. at the lake. He contends that these acts have very little,
if any, relevance as to whether Jones was indecent with G.V. and only tend to
establish that he acted in conformity with his bad character.
Here, it would have been extremely difficult for the girls who testified to
separate Jones's actions toward G.V. from his actions toward them because his
actions and words were directed at all the girls simultaneously. Even if the
girls could have somehow distinguished Jones's conduct toward the group from
Jones's conduct specifically toward G.V., this distinction would have given the
jury an inaccurate picture of Jones's relationship with G.V. Accord Wyatt v.
State, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000) (indicating jury is entitled
to know all relevant surrounding facts and circumstances of charged offense).
Jones's prior relationship with G.V. was developed through group activities that
included K.W., A.W., T.B., and M.E. Their testimony was relevant to give an
accurate picture of Jones's prior relationship with G.V. Moreover, the trial
court's charge instructed the jury that it could consider these acts only in
determining the state of mind of Jones and G.V. and the previous or subsequent
relationship between Jones and G.V. We hold that the trial court did not abuse
its discretion by determining that the extraneous offenses involving G.V. were
relevant under article 38.37 to prove the charged offense.
2. Relevance of Acts Not Involving G.V.
J.P., J.W., R.H., and A.S. testified for the State in rebuttal concerning
extraneous crimes, wrongs, or acts committed by Jones against them. Jones argues
that this evidence was not relevant to any fact at issue and should have been
excluded.
As stated above, extraneous offenses/bad acts can be admitted for the purpose
of proving motive, opportunity, intent, preparation, plan, knowledge, or absence
of mistake or accident. Tex. R. Evid. 404(b); Booker, 103 S.W.3d at
529-30. Additionally, extraneous offense evidence may be relevant and admissible
to rebut a defensive theory. See Ransom v. State, 920 S.W.2d 288, 301
(Tex. Crim. App.) (op. on reh'g), cert. denied, 519 U.S. 1030 (1996).
The court of criminal appeals explained the use of extraneous offenses in
rebuttal,

         Rebuttal of a defense means
 evidence is introduced contradicting some aspect of the defense itself . . . .
 When a defense witness presents a picture that the defendant is not the type
 of person to commit the charged offense, the prosecution may impeach the
 defense witnesses' testimony by introduction of similar extraneous offenses.
 By raising a defensive theory, the defendant opens the door for the State to
 offer rebuttal testimony regarding an extraneous offense if the extraneous
 offense has common characteristics with the offense for which the defendant
 was on trial.


Roberts v. State, 29 S.W.3d 596, 601 (Tex. App.--Houston [1st
Dist.] 2000, pet. ref'd) (citations omitted).
Jones introduced testimony that he was not interested in sex; that his wife
was not in Wichita Falls on the evenings of July 15 or July 22; that G.V.
allegedly told a different version of the incident to a male friend; that he
appeared embarrassed at the Clearwater Pool when one of the girls had her top
off; and that he was in a hot tub alone with a girl and nothing happened. Jones
claimed that G.V. fabricated the incident and that the girls who testified about
other bad acts were lying or exaggerating in an attempt to frame him for some
unknown reason. Thus, the testimony of J.P., J.W., R.H., and A.S. regarding
Jones's conduct toward them was admissible to rebut the impression Jones left
with the jury: that G.V. fabricated the story and that she and her friends
framed him. See Wheeler v. State, 67 S.W.3d 879, 885 (Tex. Crim. App.
2002); see also Moore v. State, 4 S.W.3d 269, 276 (Tex. App.--Houston
[14th Dist.] 1999, no pet.) (stating that evidence of extraneous acts
between defendant and third party are admissible to rebut defensive theory that
defendant was being framed).
The trial court ruled that J.P.'s, J.W.'s, R.H.'s, and A.S.'s testimony was
relevant to show motive, opportunity, and plan and/or to rebut Jones's defensive
theories and instructed the jury that it could consider Jones's extraneous
offenses/bad acts towards these girls only for those purposes. The trial court's
limiting instruction shows that it admitted the evidence for its noncharacter-conforming
purpose. See Powell, 63 S.W.3d at 438. We hold that the trial court did
not abuse its discretion by determining that the testimony of J.P., J.W., R.H.,
and A.S. concerning the extraneous offenses/bad acts not involving G.V. was
relevant for purposes other than character conformity.
C. Standard of Review for Trial Court's Rule 403
Determination
Having determined that the extraneous offense/bad acts involving G.V. and
those not involving G.V. are relevant, we next review whether the trial court
abused its discretion by overruling Jones's Rule 403 objections. If a trial
court determines that evidence of other crimes or extraneous misconduct has
relevance aside from character conformity, and a timely, proper Rule 403
objection is made, the trial court must make a balancing determination under
Rule 403. Montgomery, 810 S.W.2d at 388-89. Rule 403 provides that
"[a]lthough relevant, evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence." Tex. R. Evid. 403. Only
"unfair" prejudice provides the basis for exclusion of relevant
evidence. Montgomery, 810 S.W.2d at 389. Unfair prejudice arises from
evidence that has an undue tendency to suggest that a decision be made on an
improper basis, commonly an emotional one. Id. In evaluating the trial
court's determination under Rule 403, a reviewing court is to reverse the trial
court's judgment "rarely and only after a clear abuse of discretion,"
recognizing that the trial court is in a superior position to gauge the impact
of the relevant evidence. Mozon v. State, 991 S.W.2d 841, 847 (Tex.
Crim. App. 1999); Curtis, 89 S.W.3d at 170.
The trial court's balancing determination must be measured against the
relevant criteria by which a Rule 403 decision is made. Mozon, 991
S.W.2d at 847. The relevant criteria in determining whether the prejudice of an
extraneous offense substantially outweighs its probative value include: (1) how
compellingly the extraneous offense evidence serves to make a fact of
consequence more or less probable--a factor which is related to the strength of
the evidence presented by the proponent to show the defendant in fact committed
the extraneous offense; (2) the potential the other offense evidence has to
impress the jury "in some irrational but nevertheless indelible way;"
(3) the time the proponent will need to develop the evidence, during which the
jury will be distracted from consideration of the indicted offense; and (4) the
force of the proponent's need for this evidence to prove a fact of consequence,
that is, does the proponent have other probative evidence available to him to
help establish this fact, and is this fact related to an issue in dispute. Id.
(citing Montgomery, 810 S.W.2d at 389-90). When the relevant criteria
are viewed objectively and lead to the conclusion that the danger of unfair
prejudice substantially outweighs the probative value of the proffered evidence,
the appellate court should declare that the trial court erred in failing to
exclude it. Curtis, 89 S.W.3d at 170 (citing Montgomery, 810
S.W.2d at 392).
D. Rule 403 Balancing Test
Jones argues that the prejudicial effect of the extraneous offenses/bad acts
far outweighed their probative value. Specifically, with regard to the
extraneous offenses involving G.V., Jones argues that the extraneous offenses
placed him in an extremely negative light, with a high potential for impressing
the jury in an irrational, indelible way; that they took almost as much time for
the State to develop as the charged offense; and that they did not directly
prove that Jones did what G.V. claimed. With regard to the extraneous offenses
not involving G.V., Jones argues that the testimony simply showed Jones's
unnatural attention toward teenage girls and constituted a continuation of the
character conformity evidence the State propounded throughout the trial. We
disagree.
1. Probative Value of Acts Involving G.V.
Applying the Rule 403 balancing factors set out in Montgomery, we
first examine how compellingly the extraneous acts involving G.V. show Jones's
intent in the charged offense and evaluate the strength of the evidence
connecting Jones to these extraneous offenses. Here, the indictment charged that
Jones, "with the intent to arouse or gratify the sexual desire of [Jones],
intentionally or knowingly engage[d] in sexual contact with [G.V.], by touching
the genitals, of [G.V.] a child younger than 17 years of age and not the spouse
of [Jones]." Evidence that Jones provided alcohol to minors and then
offered them money for nudity, untied the swimsuits of underage girls, paid
minors to remove their swimsuits, and paid to see an underage girl run naked on
the beach demonstrates Jones's intent to arouse or gratify his sexual desire via
underage girls. Although the extraneous sexual offenses evidence carries some
emotional weight, all of the extraneous acts involving G.V. were less heinous
than the evidence relating to the charged offense involving Jones's reaching
into G.V.'s pants and touching her. See Taylor v. State, 920 S.W.2d
319, 323 (Tex. Crim. App.), cert. denied, 519 U.S. 951 (1996).
Consequently, here, the extraneous acts were not likely to create such prejudice
in the minds of the jury that it would have been unable to limit its
consideration of the evidence to its proper purpose. See id.
Additionally, a review of the record shows that the State did not spend an
excessive amount of time developing the extraneous offense testimony. Cf.
Manning v. State, 84 S.W.3d 15, 23-24 (Tex. App.--Texarkana 2002, pet.
granted) (noting third Montgomery factor weighed in favor of excluding
extraneous offense when one-fifth of trial time spent proving extraneous
offense). Furthermore, the State needed the evidence because Jones argued that
the charged offense never occurred, or that G.V. fabricated the whole incident.
The evidence of extraneous acts showing Jones's behavior toward G.V. and her
friends on other occasions, therefore, was necessary to rebut Jones's claims of
fabrication. See Waddell v. State, 873 S.W.2d 130, 136 (Tex.
App.--Beaumont 1994, pet. ref'd) (holding that extraneous bad acts were logical
and necessary rebuttal of major defense theory of fabrication). We hold that the
trial court did not abuse its discretion by concluding that the danger of unfair
prejudice did not substantially outweigh the probative value of the extraneous
acts involving G.V.
2. Probative Value of Acts Not Involving G.V.
Under the first Montgomery factor, the acts not involving G.V.--including
evidence that Jones kissed an underage girl, massaged two underage girls under
their bras, and touched another underage girl's bare bottom--constituted
compelling evidence of Jones's intent in the present case to arouse or gratify
his sexual desires. These acts, like the acts involving G.V., were not as
heinous as the charged offense and were not so inherently inflammatory that they
were likely to cause the jury to act in an irrational, indelible way. See
Taylor, 920 S.W.2d at 323. Moreover, a review of the record shows that the
State did not spend an inordinate amount of time developing the extraneous acts
not involving G.V. Cf. Booker, 103 S.W.3d at 536 (noting third Montgomery
factor weighed in favor of excluding extraneous offense when trial time
spent proving extraneous offense exceeded time spent proving charged offense).
The State's need for this evidence was apparent because Jones had cast doubt on
the veracity of G.V.'s testimony and had offered witness testimony that he had
no interest in sex. See Wheeler, 67 S.W.3d at 888 (holding that State's
rebuttal evidence was needed to show offensive touching actually occurred).
Consequently, the testimony of the four girls contradicted defense evidence that
Jones was not interested in sex and was simply being framed. An application of
the Montgomery factors to the extraneous acts not involving G.V.
demonstrates that the trial court did not abuse its discretion by overruling
Jones's Rule 403 objection. We overrule Jones's first issue.
IV. Waiver and Harmless Error in Refusing to Give Limiting
Instructions
In his second issue, Jones alleges that the trial court erred by refusing to
give the jury contemporaneous limiting instructions before A.W., T.B., J.P., J.W.,
R.H., and A.S. testified. Rule 105 of the Texas Rules of Evidence requires a
limiting instruction, upon proper request, when evidence is admitted for one
purpose but is not admissible for another purpose. Tex. R. Evid. 105(a); see
also Rankin v. State, 974 S.W.2d at 713. When a trial court errs by
refusing to give a contemporaneous limiting instruction, that error is
non-constitutional and is subject to a harmless error analysis pursuant to Texas
Rule of Appellate Procedure 44.2(b). See Jones v. State, 944 S.W.2d
642, 653 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 832 (1997); Lemmons
v. State, 75 S.W.3d 513, 524-25 (Tex. App.--San Antonio 2002, pet. ref'd); Rankin
v. State, 995 S.W.2d 210, 215 (Tex. App.--Houston [14th Dist]
1999, pet. ref'd). A non-constitutional error is harmless unless it affects a
defendant's substantial right:

         Rule 44.2(b) requires an
 appellant to show that a substantial right was affected. Tex. R. App. P.
 44.2(b). A substantial right is affected when the error had a substantial and
 injurious effect or influence in determining the jury's verdict. A criminal
 conviction should not be overturned for non-constitutional error if the
 appellate court, after examining the record as a whole, has a fair assurance
 that the error did not influence the jury, or had but a slight effect.

Lemmons, 75 S.W.3d at 524-25 (citations omitted).
A. Jones Failed to Timely Request a Limiting Instruction
Jones first argues that the trial court improperly overruled his requests
that the prosecution state the purpose for offering the extraneous offense/bad
acts evidence and his request that the jury be instructed accordingly with
regard to A.W.'s and T.B.'s testimony. A.W. testified that Jones provided
alcohol to underage girls when he offered them money to take off their
swimsuits; T.B. testified that Jones offered underage girls money to jump into
the pool without their tops. At the time Jones requested limiting instructions
concerning A.W.'s and T.B.'s testimony, G.V. and others had already testified
regarding these events. Jones did not request a limiting instruction at the time
the events were first described. Consequently, the evidence was admitted for all
purposes and Jones was not later entitled to a contemporaneous limiting
instruction. See Hammock v. State, 46 S.W.3d 889, 895 (Tex. Crim. App.
2001) (holding that when party does not request limiting instruction at first
opportunity, evidence is admitted for all purposes). We hold that Jones waived
any error with respect to the trial court's refusal to give a contemporaneous
limiting instruction with A.W.'s and T.B.'s testimony.
B. Refusal to Give Contemporaneous Limiting Instruction Harmless
Jones also complains about the trial court's refusal to give contemporaneous
limiting instructions before J.P., J.W., R.H., and A.S. testified as rebuttal
witnesses. The testimony of these girls was admissible only to prove motive,
opportunity, or plan and to rebut Jones's defensive theories. Based on Jones's
timely request, the trial court erred by refusing to give a limiting instruction
to the jury, limiting their consideration of this testimony to the stated
purposes. See Tex. R. Evid. 105(a).
Here, after examining the record as a whole, we have a fair assurance that
this error did not influence the jury, or had but a slight effect and did not
affect any substantial right belonging to Jones. See Tex. R. App. P.
44.2(b). Any prejudicial influence caused by the trial court's error was limited
by various factors. First, the testimony at issue was presented in the State's
rebuttal case, toward the end of trial. Consequently, there was a relatively
short interval between the introduction of the evidence and the trial court's
reading of limiting instructions in the court's charge. See Lemmons, 75
S.W.3d at 525 (holding that, given short time between introduction of extraneous
offense evidence and reading of charge's limiting instruction, error did not
affect substantial right). Second, as discussed above, the rebuttal extraneous
offense/bad acts evidence was not more heinous or inflammatory than the charged
offense, minimizing the prejudicial effect of the evidence even in the absence
of a contemporaneous limiting instruction. See, e.g., Jones, 944 S.W.2d
at 654. Finally, Jones received one limiting instruction in the jury charge with
regard to acts involving G.V. and a second limiting instruction with regard to
acts not involving G.V., which further reduced the risk that the jury might
misuse the evidence during jury deliberations. See id. For these
reasons, we conclude that the trial court's error in overruling Jones's request
for a contemporaneous limiting instruction prior to the rebuttal testimony of
the four girls was harmless. See Tex. R. App. P. 44.2(b). We overrule
Jones's second issue.
V. Proper Limiting Instruction and Definition in Jury Charge
In his third and fifth issues, Jones alleges that the trial court erred by
giving an improper limiting instruction on the use of extraneous offense/bad act
evidence and by giving an improper definition of "reasonable doubt" in
the jury charge at the guilt-innocence phase. We address these issues in turn.
A. Standard of Review for Alleged Error in Jury Charge
Appellate review of error in a jury charge involves a two-step process. Abdnor
v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, we must
determine whether error occurred. If so, we must then evaluate whether
sufficient harm resulted from the error to require reversal. Id. at
731-32. Error in the charge, if timely objected to in the trial court, requires
reversal if the error was "calculated to injure [the] rights of the
defendant," which means no more than that there must be some harm
to the accused from the error. Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon
1981); see also Abdnor, 871 S.W.2d at 731-32; Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). In other words, a
properly preserved error will call for reversal as long as the error is not
harmless. Almanza, 686 S.W.2d at 171. In making this determination,
"the actual degree of harm must be assayed in light of the entire jury
charge, the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole." Id.; see also
Ovalle v. State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).
B. Proper Limiting Instruction on Use of Extraneous Acts
Jones contends in his third issue that the trial court erred by refusing to
explain to the jury the specific issue or issues that each extraneous bad act
was admitted to prove. Jones also claims that the trial court erred by
instructing the jury that it could consider the extraneous act evidence as proof
of opportunity.
The trial court instructed the jury with regard to the acts involving G.V.:

         [I]f you find and believe beyond
 a reasonable doubt from such testimony that other acts were committed, you may
 then consider the same in determining the state of mind of the defendant and
 of the child, [G.V.], and the previous and subsequent relationship between the
 defendant and the child, [G.V.], if it does and for no other purpose.

The trial court instructed the jury with regard to the acts involving persons
other than G.V.:

         [I]f you find and believe beyond
 a reasonable doubt from such testimony that other acts were committed, you may
 then consider the same in determining motive, opportunity, plan, and/or
 rebuttal of a defensive theory, if it does and for no other purpose.

The record indicates that the trial court reached its decision to give the
preceding instructions after hearing arguments from both sides:

         [DEFENSE COUNSEL]: Judge, then
 further on in that same paragraph, starting three lines up from the -- two or
 three lines up from the end of the paragraph, where it reads, you may then
 consider the same in determining motive, opportunity and intent, preparation,
 plan and rebuttal of a defensive theory, I object to that laundry list of
 possibilities and ask that it be restricted to whatever reason the State
 offered it, whatever theory they submitted that evidence on.
         THE COURT: What wording would
 you propose to substitute?
         [DEFENSE COUNSEL]: Well, I don't
 know what their theory is, but it's either motive or opportunity or maybe it's
 intent or -- I don't know, maybe they think it's preparation or plan or maybe
 they think it's rebutting, I don't know, but whatever they think it is, I
 think it ought to be limited and the instruction ought to be limited in scope
 to why they offered it.
         THE COURT: Well, let me say
 this. As far as the Court's concerned, and in order to be a guide to the
 State, since we have so many of these extraneous, I think each one of them has
 to stand on its own, and I don't know that -- I mean, I can see how some of
 them can come in under one and some under another.
         [PROSECUTOR]: Well, Judge, our
 theory in admitting both of them, if you look at it, really, there's only two
 sets of girls. Once you get past [G.V.] --
         THE COURT: Right.
         [PROSECUTOR]: -- we had the
 Clearwater pool and boat incidences and those went under 38.37, which dealt
 with the relationship and state of mind of [G.V.] and the defendant.
         THE COURT: Right.
         [PROSECUTOR]: And then after the
 defense started along down the line of, you know, he doesn't have any sexual
 interest, he doesn't know how to work a VCR, then those set of girls just went
 to rebut that defensive theory, and I think --
         THE COURT: Okay. So you want to
 just limit it to rebuttal of the defensive theory? Really, that's why I let it
 in, as far as the Court's concerned.
         [PROSECUTOR]: But I think if you
 look at, then, the cases that talk about when the defense brings up, you know,
 medical reason, that, you know, impotency or lack of desire, when they talk
 about it, they talk about how it really goes unlike what you're talking about
 is opportunity, motive and plan. I mean, I don't care -- I mean, that was our
 reasoning --
         THE COURT: Well, let's leave out
 -- as far as the Court's concerned, let's leave out, then, intent and
 preparation. That leaves motive, opportunity, plan and rebuttal of defensive
 theory.
         Do you have any problem with
 that from the State's point of view?
         [PROSECUTOR]: No, sir.
         THE COURT: Okay. Let's leave
 intent and preparation out.
         Now, do you have any objection
 to it?
         [DEFENSE COUNSEL]: Yes, sir. I
 don't think those extraneous offenses have anything to do with opportunity.
         THE COURT: All right. I'll --
 I'll overrule that objection, then. And it will be left in -- opportunity will
 be left in.

This exchange between the trial court and the parties indicates that the
State offered the incidents in question not only to rebut a defensive theory,
but also to show opportunity, motive, and plan. The trial court's responses
indicate an acceptance of the State's reasoning. Thus, the trial court found
that the extraneous offense and bad acts evidence was offered for and relevant
for all four purposes, including opportunity. See Taylor, 920 S.W.2d at
323 (holding that when extraneous offense evidence is relevant to motive,
intent, identity, and rebuttal of defensive theory, trial court may properly
include more than one purpose in jury instruction). We hold that the trial court
did not err by including two limiting instructions in the jury charge, properly
instructing the jury on the purposes for which the extraneous offense/bad acts
evidence could be considered. Under the first step of the Almanza
analysis, no charge error occurred. 686 S.W.2d at 174. Consequently, we need not
conduct a harm analysis. We overrule Jones's third issue.
C. Proper Definition of Reasonable Doubt
In his fifth issue, Jones contends that the trial court erred by including in
the charge at the guilt-innocence phase part of the disapproved Geesa(2)
"reasonable doubt" definition. Jones claims that the inclusion of this
reasonable doubt definition violates Paulson v. State.(3)
We have decided this issue adversely to Jones. See Minor v. State, 91
S.W.3d 824, 827 (Tex. App.--Fort Worth 2002, pet. ref'd). Accordingly, we
overrule Jones's fifth issue.
VI. Court Properly Overruled Jones's Objection During Final
Argument
In his fourth issue, Jones argues that the trial court erred by overruling
his objection to the State's final argument during the guilt-innocence phase.
Specifically, Jones complains that the prosecutor went outside the record by
stating, "Lies are concocted and rehearsed. And bless her little heart, did
you hear [Jones's daughter] this morning? She was rehearsed and practiced.
That's what a lie sounds like." Furthermore, Jones alleges that he was
harmed because the trial court put its "imprimatur on the State's
argument."
A. Standard of Review for Jury Argument
To be permissible, the State's jury argument must fall within one of the
following four general areas: (1) summation of the evidence; (2) reasonable
deduction from the evidence; (3) answer to argument of opposing counsel; or (4)
plea for law enforcement. Felder v. State, 848 S.W.2d 85, 94-95 (Tex.
Crim. App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro v.
State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).
If a jury argument exceeds the bounds of proper argument, the trial court's
erroneous overruling of a defendant's objection is not reversible error unless
it affected the appellant's substantial rights. Tex. R. App. P. 44.2(b); Martinez
v. State, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000); Mosley v. State,
983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), cert. denied,
526 U.S. 1070 (1999). In determining whether the appellant's substantial rights
were affected, we consider: (1) the severity of the misconduct (i.e., the
prejudicial effect of the prosecutor's remarks), (2) curative measures, and (3)
the certainty of conviction absent the misconduct. Martinez, 17 S.W.3d
at 692-93; Mosley, 983 S.W.2d at 259.
B. Proper Jury Argument in Light of Evidence
Jones contends the State's argument was improper because it suggested that
Jones's daughter's (C.J.'s) testimony was fabricated when no evidence of
fabrication was presented to the jury. Citing Smith v. State, 635
S.W.2d 671, 672 (Tex. App.--Dallas 1982, no pet.), he contends that the
prosecutor's argument was "outside of the record." In Smith,
the Dallas Court of Appeals held the prosecutor's comment during closing
argument that the defendant's alibi witness waited until the day of trial to
tell anyone the defendant was at work at time of the offense injected facts not
in the record and improperly suggested the alibi witness was lying based on
evidence not before the jury. Id.
A party is permitted, however, during closing argument to allude to the
demeanor of a testifying witness if the jury had the same opportunity to observe
the demeanor during the witness's testimony. Good v. State, 723 S.W.2d
734, 736 (Tex. Crim. App. 1986). The State's argument here could be reasonably
interpreted as alluding to the purported stilted and practiced demeanor of
Jones's daughter and as drawing the inference from this demeanor that she was
lying. See Felder, 848 S.W.2d at 94-95 (recognizing State may argue
reasonable deduction from the evidence). The jury had an equal opportunity to
observe C.J.'s demeanor during her testimony, and the State was allowed to
comment on it. See id. This comment was in the nature of an observation
requiring no expertise, and therefore was incapable of adding to or subtracting
from the knowledge of the jurors who had likewise viewed C.J.'s testimony. See
Reynolds v. State, 505 S.W.2d 265, 267 (Tex. Crim. App. 1974). Thus, unlike
the prosecutor's argument in Smith, the prosecutor's comment here was
not "outside of the record" and was not improper. Cf. Smith,
635 S.W.2d at 672. We overrule Jones's fourth issue.
VII. Conclusion
Having overruled each of Jones's five issues, we affirm the trial court's
judgment.
 
                                                                       
SUE WALKER
                                                                       
JUSTICE
 
PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.
PUBLISH
DELIVERED: August 28, 2003

1. This category includes acts that were directed at G.V.
by Jones, as well as acts directed at a group of underage girls where G.V. was
present.
2. Geesa v. State, 820 S.W.2d 154 (Tex. Crim.
App. 1991), overruled by Paulson v. State, 28 S.W.3d 570 (Tex.
Crim. App. 2000).
3. 28 S.W.3d 570 (Tex. Crim. App. 2000).