

# NUMBER 13-22-00182-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LAMAR MARTINEZ LAWSON,                                          Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

### On appeal from the 275th District Court of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Longoria
### Memorandum Opinion by Justice Benavides

Appellant Lamar Martinez Lawson appeals his conviction for murder, a first-degree felony. *See* TEX. PENAL CODE ANN. § 19.02(c). A jury sentenced Lawson to sixty-five years' imprisonment. *See id.* § 12.32. By three issues, Lawson contends his conviction is defective because: (1) the trial court read the enhancement paragraphs of the indictment to the venire during voir dire, in violation of Texas Code of Criminal Procedure article

36.01; (2) trial counsel was ineffective for failing to object to the trial court's improper recital of the enhancement paragraph to the venire; and (3) the trial court abused its discretion by admitting extraneous offense evidence. We affirm.

## I.  ENHANCEMENT PARAGRAPHS

### A.  Background

At the beginning of voir dire, the Court read the indictment, stating:

> In Hidalgo County, Texas[,] [Lawson] did then and there with intent to cause serious bodily injury to an individual[, name]ly Sonya De La Cruz[,] commit an act clearly dangerous to human life that caused the death of the said Sonya De La Cruz by striking the said Sonya De La Cruz with his hand and slamming her with an object.
>
> And it is further presented that prior to the commission of the aforementioned offense on the 21st day of May in 2015 in Cause Number CR-2307-10-E in the 275th District Court of Hidalgo County, Texas[,] the Defendant was finally convicted of a felony offense of robbery.
>
> And on the 21st day of May 2015 in Cause Number CR-1426-15-E in the 275th District Court of Hidalgo County, Texas the Defendant was finally convicted of a felony offense of evading officer or detention with a vehicle against the peace and dignity of the State.

Several minutes elapsed, during which the State began conducting voir dire. Then, one of the two attorneys representing Lawson objected. At a hearing outside the presence of the jury, counsel for Lawson requested a mistrial, alleging that the trial court's reading of the enhancement paragraphs was improper.[1] The State argued the objection was untimely. Trial counsel for Lawson explained his hesitation in objecting as follows:

> Your Honor, it's during voir dire. We attempted to go up, but as soon as [the State] went up the bailiff said that we couldn't; that we had given up our chance and we had to look up the case law on the spot, but I had no choice but to interrupt the voir dire.

---

[1] Counsel did not request a curative instruction.

2

But I didn't have to do that in front of my client to prejudice him any further because it doesn't look right to interrupt someone while they're giving their presentation on such [sic] as in this case, it doesn't look well for my client as well. I don't want to do that if it's necessary.

. . . .

We tried to object as quickly as we could. It took a few minutes, but we did object. We needed to look at the case law before we objected, Your Honor, to let the Court know what the objection was.

The trial court described the sequence of events preceding Lawson's objection as follows:

In this case prior to us addressing the venire, the Court had reviewed with counsel . . . what it was going to be reading to the jury as it relates to punishment when the indictment was actually read at the general presentation of the Court.

And at that time as . . . the record indicates, counsel did approach. At that time maybe counsel was making their objection, i[f] there was going to be an objection, but the only thing that was handed to the Court was a correction to the indictment just to have some additional language as to the first paragraph of the indictment.

Subsequent to that, the Court read five single-spaced pages, I [g]ave instructions to the jury, and during that time there was a short conversation that was happening with one of the jury members.

After that the State was 12 minutes, 55 seconds into their voir dire. Because of that the Court finds the objection was not made timely.

The trial court overruled the objection and denied the request for a mistrial. The proceedings continued. At the conclusion of voir dire, trial counsel queried of the venire:

You did hear about some previous convictions for Mr. Lawson. You heard he was convicted for robbery and evading arrest. Is there anybody here that's going to hold that against him or think he's more guilty of this offense because he's been convicted for other offenses? Raise your hands all of you that think that way.

3

Counsel noted the prospective jurors who raised their hands, and later, outside the presence of the jury panel, questioned several of them further about their views on Lawson's prior convictions. Two of the potential jurors were struck for cause.

**B.      Trial Court's Recital of the Enhancement Paragraphs**

By his first issue, Lawson argues that the trial court erred by reading the enhancement paragraph of the indictment to the jury pool.

**1.      Standard of Review & Applicable Law**

"When prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.01. "The requirement that enhancement paragraphs may not be read until the punishment phase of trial is directed at preventing the jury from being prejudiced at the outset of the trial by an announcement that the State believes the defendant has been previously convicted of a prior offense." *Hardin v. State*, 951 S.W.2d 208, 211–12 (Tex. App.—Houston [14th Dist.] 1997, no pet.). "However, the trial court may inform the jury panel in hypothetical terms of the range of punishment applicable if the State proves any prior convictions for enhancement purposes." *Gentry v. State*, 881 S.W.2d 35, 40 (Tex. App.—Dallas 1994, pet. ref'd).

**2.      Analysis**

A complaint that article 36.01 was violated must be preserved in the trial court. *Cox v. State*, 422 S.W.2d 929, 930 (Tex. Crim. App. 1968). One reason we require contemporaneous objections is so that parties will alert the trial court to an impending

4

error at a point in the proceedings when the trial court is poised to either prevent or correct it. *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004).

Here, the trial court read both enhancement paragraphs and, "a few minutes" later, defense counsel objected. When ruling on the objection, the trial court noted that counsel had been given the opportunity to object to the trial court's reading of the entire indictment prior to its occurrence and outside the presence of the venire, but he failed to do so. Therefore, counsel's objection was not a "timely" one, as is required to preserve error. *See* TEX. R. APP. P. 33.1(a)(1); *Martinez v. State*, 867 S.W.2d 30, 35 (Tex. Crim. App. 1993) (explaining that to preserve error, "[t]he objection must be made at the earliest possible opportunity"). We overrule Lawson's first issue.

## C. Ineffective Assistance of Counsel Claim

By his second issue, Lawson argues that if the objection was untimely, then his counsel was ineffective for failing to timely object to the reading of the enhancement paragraph.

### 1. Standard of Review & Applicable Law

We evaluate claims of ineffective assistance of counsel using the two-pronged test enunciated in *Strickland v. Washington*. 466 U.S. 668, 687 (1984); *see Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland*). Under that test, an appellant is required to show both: (1) "that counsel's performance was deficient"; and (2) that "the deficient performance prejudiced" appellant. *Strickland*, 466 U.S. at 687. "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

"In order to satisfy the first prong, appellant must prove, by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Such a showing "must be firmly founded in the record." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We indulge "a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id.* "Frequently, we can conceive potential reasonable trial strategies that counsel could have been pursuing. When that is the case, we simply cannot conclude that counsel has performed deficiently." *Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). However, if counsel's behavior "was so outrageous that no competent attorney would have engaged in it," we will conclude the first *Strickland* prong has been satisfied. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Yet, even if the deficient performance prong is met, an error does not warrant setting aside the judgment if there has been no prejudicial effect on the outcome. *United States v. Morrison*, 449 U.S. 361, 364–65 (1981). "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Strickland*, 466 U.S. at 695–96. "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* The test for prejudice requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine

6

confidence in the outcome." *Id.* Therefore, the court should consider whether the factfinder would have had reasonable doubt in respect to guilt, absent counsel's error. *Id.* at 695. In considering this question, a court adjudicating an ineffectiveness claim must consider the totality of the evidence. *Id.*

### 2. Analysis

Ordinarily, the record on direct appeal is not sufficiently developed to determine trial counsel's motivations for his behavior. *See Johnson v. State*, 68 S.W.3d 644, 655 (Tex. Crim. App. 2002). However, here, counsel stated on the record several reasons he failed to object. Specifically, counsel explained that: (1) the bailiff prevented him from objecting; (2) he did not want to further prejudice his client; and (3) he needed time to determine the proper legal objection.

One of our sister courts has previously held that an attorney "could have no reasoning or strategy for not objecting" to reading an enhancement paragraph during the guilt-innocence phase of trial. *Wood v. State*, 260 S.W.3d 146, 148 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (additionally reasoning that the evidence to support the verdict was "not overwhelming"). However, another of our sister courts has reasoned that "appellant's attorney may have declined to object to the reading of the enhancement paragraphs in an attempt to avoid calling further attention to appellant's prior convictions," and trial counsel's performance was therefore not per se deficient. *Hardin*, 951 S.W.2d at 212; *see also Toledo v. State*, No. 13-17-00699-CR, 2019 WL 3819870, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 15, 2019, no pet.) (mem. op., not designated for publication) ("[T]he failure to object to the State's reading of an enhancement paragraph

7

does not necessarily constitute ineffective assistance of counsel.").

Nonetheless, "[a]n appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Thompson*, 9 S.W.3d at 813. After the trial court's ruling on his objection, trial counsel had the option to either simply hope that biased jurors did not end up on the petit jury, or he could use the slip to his advantage and discover more information about the venire. Trial counsel questioned the venire about how Lawson's prior convictions might affect their ability to be impartial and was able to successfully strike two potential jurors for cause who may have otherwise become members of the petit jury. Given the circumstances, identifying and culling the potential jurors who acknowledged their bias was a smart strategy that minimized any potential prejudicial effect resulting from the trial court's recital of the enhancement paragraphs.

We must avoid measuring counsel's performance through the lens of hindsight. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006) (explaining that the right to effective assistance of counsel "does not mean errorless or perfect counsel whose competency of representation is to be judged by hindsight"). The record reflects that both of Lawson's attorneys provided otherwise active and competent representation throughout the trial. *See Thompson*, 9 S.W.3d at 813. The failure to timely object alone was not "so outrageous that no competent attorney would have engaged in it," *see Garcia*, 57 S.W.3d at 440, especially when counsel was able to strike biased jurors as a result. *Cf. Hardin*, 951 S.W.2d at 212; *see also Toledo*, 2019 WL 3819870, at *4. Thus, based on the totality of the representation provided and the particular circumstances of this case,

8

we conclude that Lawson has not demonstrated that his counsel was ineffective. *See Thompson*, 9 S.W.3d at 813. Further, Lawson has not shown that any error resulting from counsel's actions had more than an "isolated, trivial effect" on the proceedings, as there is no evidence that biased jurors actually became members of the petit jury. *See Strickland*, 466 U.S. at 696. We therefore overrule Lawson's second issue.

## II.    EVIDENCE OF EXTRANEOUS BAD ACTS

By his third and final issue, Lawson contends the trial court erred by admitting evidence of an extraneous offense. Specifically, Lawson argues that Jessica Garza's testimony concerning a prior bad act was inadmissible because it was: (1) irrelevant; (2) improper character evidence, and (3) more prejudicial than probative. *See* TEX. R. EVID. 401, 403, 404(b).

## A.    Background

The State's theory of the case was that Lawson picked up Sonya De La Cruz, a sex worker, at La Casita Motel in his car and drove her to a secluded part of town. He then killed her. Officer Domingo Chapa of the McAllen Police Department testified that De La Cruz's body was discovered near "the intersection of Sixth and Beech Street." De La Cruz was found with a knife near her body, but she did not suffer any stab wounds.

During opening, Lawson's counsel portrayed the defense's theory of the case as follows:

> You're going to find from the evidence that [Lawson] was justified. He was acting reasonably given what he was presented with. You don't have to like how he got here or how the victim got here. But at the moment he felt that his life was in danger and he had no choice but to defend himself. And we live in Texas. It's a great state where you do not have to retreat. You can use deadly force if deadly force is being used on you, you don't have to

9

retreat. [Lawson] was faced with that reality. He had very little time to think, very little time to react. He had no choice. The evidence is going to support that.

. . . .

You're going to see evidence and hear from [Lawson] in his statement that he was never out to kill, he's not a killer. He was just faced with a situation that he had very little time to react. He was using force that he did not at the time believe was deadly even though he was entitled to use it.

In a statement Lawson made to police that was admitted into evidence, Lawson explained that De La Cruz waved the knife at him, and he then "attacked" her by striking her twice. He also pointed to the right side of his face when describing where he hit De La Cruz.

At a hearing outside the presence of the jury, the parties discussed the testimony of potential witness Garza, a former sex worker and De La Cruz's friend. The State explained that it wished to call Garza to rebut Lawson's theory that he acted in self-defense and that Garza would testify that she was previously assaulted by Lawson in the same area where De La Cruz's body was discovered. Lawson argued that Garza's testimony was irrelevant, improper character evidence, and more prejudicial than probative. *See id.* R. 401, 403, 404(b). The court overruled Lawson's objections and permitted Garza to testify.

Garza testified that on a prior occasion,[2] she was at La Casita Motel looking for a ride. Lawson approached Garza and she willingly got in his vehicle. Lawson began driving but pulled over before Garza's requested destination. Lawson punched Garza in her

---

[2] Garza also testified that she observed both De La Cruz and Lawson in Lawson's vehicle at La Casita Motel on the evening De La Cruz died. Garza explained that she was able to identify Lawson on the night of De La Cruz's death because of her encounter with him on this prior occasion.

10

stomach and her right cheek. Garza testified that this occurred "on 6th Street and Beech Street." Photos of Garza's injuries from the assault were admitted into evidence.

## B.     Standard of Review

"Extraneous-acts evidence is admissible if it is relevant to a fact of consequence in the case, and the probative value of the evidence is not substantially outweighed by unfair prejudice." *Fox v. State*, 283 S.W.3d 85, 91 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd); *see* Tex. R. Evid. 401, 403, 404(b). "[A] trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Under this standard, we do not reverse a trial court's decision unless it lies outside the zone of reasonable disagreement. *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016). "Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling." *De La Paz*, 279 S.W.3d at 344.

## C.     Analysis

### 1.     Rules 401 & 404(b)

Evidence of prior bad acts is not admissible if the sole reason for its relevancy is to show that the defendant has a propensity to commit bad acts. Tex. R. Evid. 404(b)(1). However, such evidence may "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2). "This list is illustrative, rather than exhaustive, and extraneous-offense evidence may be admissible when a defendant raises a defensive

issue that negates one of the elements of the offense." *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005).

For example, "[w]hen the accused claims self-defense or accident, the State, in order to show the accused's intent, may show other violent acts where the defendant was an aggressor." *Lemmons v. State*, 75 S.W.3d 513, 523 (Tex. App.—San Antonio 2002, pet. ref'd) (concluding that it was not an abuse of discretion to admit testimony concerning an extraneous robbery offense to show that the defendant "had acted as a first aggressor in the past"). "This is the converse of the rule that allows a defendant to show extraneous acts of violence by the deceased in a murder case when the defendant claims self-defense and that the deceased was the first aggressor." *Robinson v. State*, 844 S.W.2d 925, 929 (Tex. App.—Houston [1st Dist.] 1992, no pet.). Further, a defendant can open the door to the admission of extraneous-offense evidence by raising a defensive theory in opening argument. *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008).

Here, Lawson asserted, both in his opening argument and in his statement to police, that he was acting in self-defense when he struck De La Cruz. Thus, the State was permitted to rebut this theory by introducing evidence of extraneous offenses in which Lawson was the aggressor. *See Lemmons*, 75 S.W.3d at 523; *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). In other words, the trial court's ruling that Garza's testimony was relevant for a non-propensity purpose was within the zone of reasonable agreement. *See De La Paz*, 279 S.W.3d at 344.

### 2.    Rule 403

"The court may exclude relevant evidence if its probative value is substantially

outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

> In considering a Rule 403 objection, the trial court must engage in a balancing test that considers: (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the proponent's need for the evidence.

*Perkins v. State*, 664 S.W.3d 209, 216 (Tex. Crim. App. 2022). This balancing test "is always slanted toward admission, not exclusion, of otherwise relevant evidence." *De La Paz*, 279 S.W.3d at 343.

We first examine how compellingly the extraneous offense evidence tends to disprove Lawson's claim of self-defense. *See Perkins*, 664 S.W.3d at 216. If believed, Garza's testimony demonstrated that Lawson acted as an aggressor and assaulted her. This is probative on the issue of Lawson's claim of self-defense. *See Render*, 347 S.W.3d at 921.

Next, we analyze the potential for the extraneous offense evidence to mislead the jury. *See Perkins*, 664 S.W.3d at 216. Here, the extraneous offense was similar to the indicted offense. "Whenever the extraneous offense is similar to the charged offense, there is always a potential that the jury may be unfairly prejudiced by the defendant's character conformity." *Beam v. State*, 447 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2014, no pet.). However, we can also consider the jury charge when determining whether the extraneous offense evidence had a misleading effect. *Blackwell v. State*, 193

13

S.W.3d 1, 15 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Here, the jury charge contained the following limiting instruction:

> The State has introduced evidence of extraneous crimes or bad acts other than one charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, if it does, for the purpose of showing the Defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, if any. You cannot consider the testimony unless you find and believe beyond a reasonable doubt that the defendant committed these acts, if any.

The jury instruction properly limited the jury's consideration of the extraneous offense evidence to issues other than character conformity, such as Lawson's intent, and therefore minimized the potential misleading effect of the evidence. *See id.*; TEX. R. EVID. 403; *Beam*, 447 S.W.3d at 405.

Additionally, Garza's testimony is a relatively short portion of the State's case-in-chief. In total, her testimony spans approximately twenty-one pages of the reporter's record. Further, because she had knowledge of other relevant matters, only thirteen pages of her testimony were dedicated to specifically addressing the extraneous offense. By comparison, the State's entire case-in-chief spans approximately five hundred pages.

Finally, the State claimed that Garza's testimony was the main evidence it had to rebut Lawson's claim of self-defense. Whether Lawson acted in self-defense was a hotly contested issue at trial. For example, in closing, Lawson urged, "Who brought deadly force to the table[?] We don't know. . . . We will never know. That's why we tell you the State cannot prove beyond a reasonable doubt that it wasn't self-defense." When an issue at trial is "hotly contested," the extraneous offense evidence is "of critical importance to the State." *Lane v. State*, 933 S.W.2d 504, 521 (Tex. Crim. App. 1996).

14

Based on our review of the relevant factors, we conclude that the trial court did not abuse its discretion in concluding that the probative value of the extraneous offense evidence was not outweighed by its prejudicial effect. *See Perkins*, 664 S.W.3d at 216. We overrule Lawson's final issue.

### III. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES<br>Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
10th day of August, 2023.